**Meir DUBINSKY, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Daktronics, Inc., Defendant–Intervenor.**

No. 98–884C.

United States Court of Federal Claims.

July 9, 1999.

Meir Dubinsky, Niles, Illinois, plaintiff pro se.

Katherine A. Barski and Joel McElvain,[1] U.S. Department of Justice, Washington, D.C., with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, Deputy Director Sharon Y. Eubanks, U.S. Department of Justice, Washington, D.C., for defendant.

Robert E. Hayes and Roberto A. Lange, Sioux Falls, South Dakota, for defendant-intervenor.

1. Mr. McElvain served as defendant's counsel until January 29, 1999. On February 1, 1999, Ms. Barski was assigned responsibility for this case.

## ORDER ON COSTS AND EAJA FEES AND EXPENSES

BRUGGINK, Judge.

On March 25, 1999, the court granted summary judgment in plaintiff's favor in this bid protest action.[2] *See Dubinsky v. United States*, 43 Fed.Cl. 243 (1999), *appeal filed*, No. 99–5107 (Fed. Cir. June 1, 1999). The court enjoined continuance of the contract with the putative awardee, defendant-intervenor Daktronics, Inc. ("Daktronics"). *See id.* at 274–75. We also awarded plaintiff bid preparation costs of $2,000 pursuant to 28 U.S.C. § 1491(b)(2) (Supp. II 1996) and granted plaintiff costs under 28 U.S.C. § 1920 (1994). *See id.* at 275–76. Pending are plaintiff's application for section 1920 costs and his application (as amended) for fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (1994 & Supp. II 1996).

## BACKGROUND

The facts surrounding this procurement are set out in detail in the court's March 1999 opinions. A brief summary follows.

This bid protest arose out of a procurement by the United States Air Force Academy ("Academy") for a new electronic scoreboard for the Academy's football stadium in Colorado. The request for proposals ("RFP") was issued under the streamlined procedures of Federal Acquisition Regulation ("FAR") subpart 12.6 for commercial items and conducted as a negotiated procurement. The RFP, as amended, stated twenty-three technical specifications and provided that each submitted proposal would be evaluated using a "( + )" (exceeds), "(0)" (meets), or "(-)" (does not meet) rating scale for each of these specifications. Each proposal would then receive an overall rating for "Technical Requirements." Contract award would be made to the offeror "whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered." The Technical Requirements factor was stated as the most important evaluation factor, followed by "Delivery Capability," "Past Performance", and "Price."

Six offerors submitted proposals but none were deemed to be technically acceptable. The Academy conducted discussions with each of these offerors and requested final proposal revisions. Following evaluation of these final proposals, the contract was awarded to Daktronics, the only offeror to receive a( + ) rating for Technical Requirements. Plaintiff's three offers were deemed to be technically acceptable but not deserving of a( + ) rating, and were thus considered less advantageous to the Academy.

After receipt of final proposals, Sgt. Vaccarella, the contracting officer, engaged in a series of discussions with Daktronics to correct technical deficiencies remaining in its final proposal revision. During this process, Daktronics submitted several revisions to its final proposal, the last of which was received after the contract had been executed but was nevertheless inserted into the contract.

Plaintiff raised numerous challenges to the evaluation of his and Daktronics' proposals, and to the agency's conduct of discussions with only Daktronics after the receipt of final proposals. The parties cross-moved for summary judgment and an evidentiary hearing was held on February 9, 1999 at which Sgt. Vaccarella testified. A few days prior to the hearing, Sgt. Vaccarella informed defendant's counsel for the first time that, contrary to the terms of the RFP and his written statements submitted to the General Accounting Office ("GAO"), he had conducted the procurement as a simplified acquisition pursuant to FAR Part 13 procedures, under the FAR subpart 13.5 test program for commercial item acquisitions under $5,000,000. Subsequently, at oral argument, defendant asserted that the procurement should be reviewed against the more lenient procedural framework set forth in Part 13 rather than the detailed mandatory procedures in Part 15. It conceded that the Academy's discussions with Daktronics after receipt of final proposal revisions violated Part 15.

The court's March 25, 1999 opinion rejected defendant's argument that the procurement was conducted as a simplified acquisition. The only evidence to support

---

2. A redacted version of the court's opinion was issued on March 31, 1999.

defendant's contention was the unsubstantiated testimony of Sgt. Vaccarella, which the court did not find to be persuasive. We held that the totality of documentary and circumstantial evidence conclusively demonstrated that the procurement had been conducted pursuant to Part 15 procedures. *See Dubinsky,* 43 Fed.Cl. at 254–60. Consequently, the contracting officer's discussions with Daktronics after receipt of final proposal revisions violated FAR 15.307(b) and the late offer clause, FAR 52.212–1(f). *See id.* at 260–66. Moreover, the court held that the evaluations of offerors' proposals were conducted in an arbitrary and capricious manner. In particular, we found that Daktronics' final proposal revision did not comply with seven of the mandatory technical specifications, nor with the payment terms specified in the RFP. *See id.* at 267–69, 270–71. We also held that the Academy improperly: (1) awarded high evaluation ratings to Daktronics on two technical subfactors even though the proposal was noncompliant in these two areas; (2) augmented Daktronics' evaluation rating based upon unsolicited criteria; (3) rated plaintiff's offers lower than Daktronics' with respect to two subfactors, even though plaintiff's offers met or exceeded the terms offered by Daktronics; and (4) granted other offerors bonus ratings for offering unsolicited additional equipment but failed to award the same bonus to plaintiff. *See id.* at 266–73. Furthermore, we held that, even after the series of improper discussions with Daktronics, its "final" final proposal revision, which was incorporated into the contract, failed to comply with at least six of the technical specifications in the RFP. *See id.* at 274. Accordingly, we enjoined the Academy from continuing the procurement. *See id.* at 276.

## DISCUSSION

### I. Bill of Costs

■ Plaintiff seeks to be reimbursed the following costs under section 1920: $110.00 for the court filing fee; $203.75 for overnight mailing expenses; and $348.00 for duplication costs. Defendant's only objection is to a portion of the duplication expenses. Under this item, plaintiff requests reimbursement for 1740 photocopied pages. Defendant cites Appendix I to the court's rules, which suggests that duplication expenses should be limited to those incurred in duplicating up to five copies of materials used in connection with dispositive motions. Because plaintiff's briefs on dispositive matters totaled only eighty-nine pages, defendant contends that plaintiff can only receive reimbursement for 445 pages, or $89.00.

■ The statute, however, does not contain this five-copy limitation. It permits recovery of expenses for copies "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Appendix I, while useful guidance, is thus not controlling. Moreover, section 1920 does not prohibit recovery of duplication costs relating to documents other than briefs on dispositive matters. The court finds that the request for duplication expenses is reasonable and thus that all requested costs are recoverable. Plaintiff is awarded $661.75 in costs.

### II. EAJA Fees and Expenses

Plaintiff's EAJA application seeks recovery of $34,836.57 in fees and expenses. The bulk of this request—$34,512.82—pertains to the fees and expenses of Mr. Stan Laber, a contract consultant hired by plaintiff to help him interpret procurement statutes and regulations, draft legal briefs, and assist with other aspects of the protest. The remaining $323.75 of plaintiff's claim seeks reimbursement of his filing fee and overnight mailing expenses, which we have granted above and thus deny here as moot.

Defendant raises several objections to plaintiff's application. First, defendant argues that its position in this protest was substantially justified and thus no EAJA award is permitted. Second, defendant contends that the EAJA does not authorize reimbursement of consultant fees incurred in the provision of legal services, because this category of fees is not expressly authorized by the statute. Finally, defendant asserts that the amount of Mr. Laber's fees is unrea-

sonable in the context of this protest, which involved a procurement of approximately $200,000.

### A. Substantial Justification

Under the EAJA, a prevailing party is entitled to recover attorney fees and expenses—provided it meets the eligibility criteria set out in the statute, timely files an application with the court, and submits adequate documentation to support the application—"unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government bears the burden of proving that its position was substantially justified. *See Doty v. United States,* 71 F.3d 384, 385 (Fed.Cir.1995). It must show that its position throughout the dispute was " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). This inquiry encompasses both the agency's pre-litigation conduct and the Department of Justice's subsequent litigation position before the court. *See Commissioner, INS v. Jean,* 496 U.S. 154, 159, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Doty,* 71 F.3d at 386.

Defendant argues that its position was substantially justified because the "Academy intended to conduct the solicitation pursuant to [Part 13] and the Government defended the solicitation accordingly." Def.'s Opp'n at 4. It contends that the Academy conducted the procurement in accordance with regulations governing simplified acquisitions and consistent with the "broad discretion" granted to contracting officers under the FAR test program.

The obvious flaw in defendant's argument is that the Academy did *not* conduct this procurement as a simplified acquisition under the commercial item test program. Instead, this procurement was conducted as a standard negotiated procurement. The Academy defended plaintiff's protest before the GAO as a Part 15 (i.e. non-simplified) procurement. In the agency report submitted to GAO in October 1998, Sgt. Vaccarella explicitly stated that the procurement was conducted pursuant to "FAR 12 and 15 procedures," not Part 13. There is nothing in the administrative record to suggest to the contrary. This absence of documentation is particularly striking because agencies are required by FAR 13.501 to document the use of the test program in any procurement. As discussed in our opinion, a variety of circumstantial evidence supports the court's conclusion that the procurement was conducted pursuant to Part 15. *See Dubinsky,* 43 Fed. Cl. at 255–58. Sgt. Vaccarella's unsupported testimony to the contrary at the February 9, 1999 evidentiary hearing was not credible. The court concluded that his "eleventh-hour recollection was an attempt to characterize this procurement as a type which the GAO had found unobjectionable in *West Coast Research* just a few days before." [3] *Id.* at 257. Accordingly, defendant's asserted justification has no legitimate basis.

The position taken by the Department of Justice ("DOJ") in this bid protest also lacked substantial justification. Prior to February 1999, DOJ had no reason to believe that Part 13 had any application to this procurement. At the evidentiary hearing, defendant's counsel admitted that she had not learned about Sgt. Vaccarella's assertion regarding the use of the test program until the preceding weekend. [4] The chronology of events, therefore, negates defendant's assertion that its justification for litigating this protest was that the Academy had acted in accordance with simplified acquisition procedures. In light of defendant's concession at oral argument that the Academy's discussions solely with Daktronics after the receipt

---

3. In *West Coast Research,* 99–1 C.P.D. ¶ 27 (1999), the GAO denied a bid protest of an Academy procurement conducted by Sgt. Vaccarella primarily on the ground that the agency did not abuse the broad discretion bestowed on it when it elects to conduct a procurement under the Part 13 test program.

4. The DOJ attorney handling the protest prior to February 1, 1999 never raised the test program issue during any of the status conferences held in the ten weeks that he was attorney of record. It is safe to assume, therefore, that the test program status vel non of the procurement did not form the basis for his opposition to plaintiff's protest.

of final proposals violated Part 15, defendant has failed to present any colorable argument that its opposition to plaintiff's protest was justified prior to February 1999.

Moreover, the government's position was not substantially justified even after Sgt. Vaccarella raised the test program issue (assuming arguendo that his assertion was correct and Part 13 procedures did apply here). Two arguments raised by plaintiff were not dependent upon our holding with respect to the status of the procurement vis-a-vis the test program. First, plaintiff asserted that the Academy improperly accepted revisions to Daktronics' final proposal revision after the submission deadline. We held that these actions violated the express terms of the late offer clause incorporated into the solicitation. *See id.* at 265–66. Defendant's only argument on this point—that the solicitation did not contain such a clause, *see* Def.'s Post-Hr'g Br. at 6—was incorrect and lacked a reasonable basis.

Second, defendant was unable to present any colorable argument to blunt plaintiff's allegation that Daktronics' final proposal revision was technically unacceptable because it failed to comply with a number of the mandatory technical specifications. The court held that Daktronics' proposal did not comply with seven specifications and that the offered payment terms were incompatible with FAR requirements. *See Dubinsky,* 43 Fed.Cl. at 267–69, 270–71. These deficiencies were apparent from a simple comparison of the proposal with the solicitation terms. When confronted with examples of these deficiencies during the evidentiary hearing, Sgt. Vaccarella conceded Daktronics' proposal was deficient on its face. *See id.* at 267 n. 57, 269, 271. Defendant's position that Daktronics' proposal met each of these criteria was not a reasonable one.

For these reasons, we hold that defendant has failed to show that its position was substantially justified at any time during the course of this protest. Plaintiff is entitled to recover his reasonable, allowable, and proven fees and expenses.

**B. Recovery of Consultant Fees and Expenses**

The only remaining items for which plaintiff seeks to be reimbursed are the fees and expenses of Mr. Laber, in the total amount of $34,512.82. Of this amount, $33,637.50 pertains to his fees, based upon his hourly rate of $150. In addition, plaintiff seeks $875.32 for expenses billed by Mr. Laber: $614.92 for transportation to and from the evidentiary hearing in Washington, D.C., and $260.40 for photocopying and fax charges.

Plaintiff suggests that, as a practical matter, he could not go forward without such assistance as Mr. Laber afforded, therefore, in equity, these fees and expenses should be recoverable. The difficulty with that, of course, is that there must be a statutory predicate for shifting litigation costs to the government. *See Levernier Constr., Inc. v. United States,* 947 F.2d 497, 502–03 (Fed.Cir. 1991) (reversing award of EAJA fees based on equitable considerations rather than strict construction of the statute). The EAJA is a waiver of sovereign immunity and thus "must be strictly construed in favor of the United States." *Ardestani v. INS,* 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991); *see Bazalo v. West,* 150 F.3d 1380, 1382 (Fed.Cir.1998); *Levernier,* 947 F.2d at 503 (stating that this court is "not free to interpret the EAJA in any manner which is not based on the explicit congressional mandate").

A successful plaintiff is entitled to an award of "fees and other expenses" if it meets the EAJA eligibility criteria, application deadline, and documentation requirements. This phrase is defined to include the following three categories: (1) the reasonable fees and expenses of expert witnesses; (2) the reasonable cost of any "study, analysis, engineering report, test, or project" deemed by the court to be necessary to the plaintiff's case; and (3) reasonable attorney fees. *See* 28 U.S.C. § 2412(d)(2)(A). In order to recover, therefore, plaintiff's claimed fees and expenses must fall within one of these permissible categories. *See Outlaw v. Chater,* 921 F.Supp. 13, 16–17 (D.D.C.1996) (denying an application for consultant fees because they

did not fall into any one of these categories); *see also Cook v. Brown,* 68 F.3d 447, 451 & n. 2 (Fed.Cir.1995) (denying a plaintiff's application for agent fees because such fees are not explicitly enumerated under section 2412(d)).

Mr. Laber did not testify in court and thus does not qualify as an expert witness. He did not prepare a study, analysis, engineering report, test, or project. He is not an attorney.[5] There is no other exception to the general rule that the plaintiff must bear his own expenses in this regard.[6] *See Outlaw,* 921 F.Supp. at 17.

There being no statutory basis for awarding Mr. Laber's fees and expenses, it is unnecessary to address defendant's argument that the quantum of claimed fees and expenses was unreasonable in the context of this procurement.

## CONCLUSION

Plaintiff's application for costs is granted in full. His application for EAJA fees and expenses is denied. The Clerk is directed to enter judgment in plaintiff's favor in the amount of $661.75.

---

**5.** Although plaintiff disputes the fact, it is plain that Mr. Laber's services were, in substance, a substitute for legal assistance. · The principal function served by Mr. Laber was to provide services that otherwise would have been provided by an attorney—preparation of pleadings and other court filings, interpretation of procurement law, and advice on strategy. *Cf. Outlaw,* 921 F.Supp. at 17 (holding that the fees charged by a consultant for preparation of pleadings could be recovered, if at all, only under the attorney fee provisions of EAJA). Mr. Laber is not an attorney, however, and his fees and expenses cannot

be reimbursed on that basis. *See Cook,* 68 F.3d at 451 (holding that an attorney is "someone formally trained and licensed in the general · practice of law").

**6.** We note that consultant fees are not per se unrecoverable. For example, consultant fees incurred to prepare a study, analysis, or report would be recoverable, if necessary to preparation of a party's case and reasonable in amount. *Cf.* 28 U.S.C. § 2412(d)(2)(A); *Levernier,* 947 F.2d at 499–502.