COMPUBAHN, INC., Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 94–781C.

United States Court of Federal Claims.

July 21, 1995.

David Cain, San Francisco, CA, for plaintiff.

Stephanie M. Jackson, Washington, DC, with whom was Asst. Atty. Gen. Frank W.

Hunger, David M. Cohen, and Jeanne E. Davidson, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on the parties' cross motions for summary judgment pursuant to RCFC 56. For the reasons set forth below, the court grants defendant's motion and denies plaintiff's motion.

## FACTS

The material facts of this case are not in dispute, and are summarized below. Plaintiff is a disappointed bidder for a Government contract with the Department of Defense.

### I. Background

In May 1993, the Advanced Research Project Agency of the Department of Defense (DARPA) published and mailed a solicitation of proposals to over 50,000 small businesses, as part of its Small Business Innovation Research (SBIR) program. The SBIR program represented a portion of the activities of DARPA's Technology Reinvestment Project (TRP), the name given to a cooperative effort of federal government agencies to implement parts of the Defense Conversion, Reinvestment, and Transition Assistance Act of 1992.[1] 10 U.S.C. §§ 2511–13, 2522–24 & 2196–97. Over $500 million was appropriated by the Congress to fund projects such as the TRP. *Id.* DARPA, the Department of Energy, the Department of Commerce, the National Aeronautics and Space Administration (NASA), the National Science Foundation (NSF), and the Department of Transportation collaborated to form the Defense Technology Conversion Committee (DTCC), the administrative body of the joint program solicitation.

The TRP SBIR solicitation covered three phases of potential funding. The DTTC anticipated that it would award approximately 72 Phase I contracts, each with a funding total not to exceed $100,000. Businesses awarded Phase I contracts would become candidates for Phase II funding, not to exceed $375,000 per contract. Likewise, Phase III contracts would be awarded to meritorious Phase II participants. The solicitation further stated that the DTTC was not obligated to make awards under either Phase I, II, or III, and would not be responsible for monies expended by the proposer before award of any contract.

Between May and September 1993, the DTTC received 2,453 proposals from a variety of qualified small businesses. Each proposal was earmarked for one of 28 topic categories. Plaintiff submitted a proposal under the "Software Development Methods, Tools, and Environments" category, numbered TRP 93–003. Plaintiff's proposal was one of 101 proposals submitted under category TRP 93–003.

### II. Evaluation of Proposals

The solicitation detailed the method of selection and evaluation criteria for the proposals. Proposals would be evaluated first on their relevance to the chosen topic, and then on the following four criteria:

(1) the soundness and technical merit of the proposed innovative approach and its potential contribution toward topic solution; (2) the potential for commercial (government or private sector) application and the benefits expected to accrue from this commercialization; (3) the adequacy of the proposed effort for the fulfillment of requirements of the research topic; and (4) the qualifications of the proposed principal investigators, supporting staff, and consultants.

The solicitation also stated that were technical evaluations equal in merit, cost to the government would be considered in determining a successful offeror. It warned that technical reviewers would base their conclusions only on information contained in the proposal, and that no assumption could be made that its reviewers would be acquainted with any referenced experiments.

---

1. Congressional defense policy includes the stated goal of maintaining advanced research and development activities to provide the armed forces with systems capable of ensuring technological superiority over potential adversaries. 10 U.S.C. § 2501(a)(3) (1992).

### III. Plaintiff's Proposal

Between September 1993 and March 1994, the DTTC evaluated plaintiff's proposal. A panel of five evaluators was assigned to judge plaintiff's proposal and those of other competitors under category TRP 93–003. The evaluators included the program director for the Software Engineering Program at the NSF, the chief of the Advanced Processing Branch at the U.S. Army Space and Strategic Defense Command, the manager of the Information Science and Technology Office at the Ballistic Missile Defense Organization, a software engineer at the U.S. Air Force Phillips Laboratory, and an electrical engineer at the Advanced Technology Directorate of the U.S. Army Space and Strategic Defense Command. All five evaluators had previous experiences in evaluating technical SBIR proposals and were chosen by their respective agencies on the request of the DTTC that each agency select only highly qualified personnel to evaluate the proposals submitted under the TRP SBIR.

Each evaluator filled out a written evaluation form for plaintiff's proposal to be submitted to the TRP SBIR review panel. Each form was one page in length and contained five questions to be used as guidelines for evaluators. A small space was left below each question for evaluators to insert comments. Three evaluators commented below each question on their respective forms, and two gave only sporadic comments. Evaluators could either recommend funding for the proposal, not recommend, or recommend with condition. Of the five evaluation forms submitted, plaintiff's proposal received no outright recommendations to fund. Two evaluators gave conditional recommendations.

Subsequently, plaintiff's proposal and the five evaluations were submitted to TRP SBIR review panel for further discussion and consideration. The review panel made recommendations to its chairman, who in turn made recommendations to the TRP working group. Final recommendations were made by the DARPA Deputy Director for Management, who made decisions consistent with the recommendations of the TRP working group and subsequent DTTC deliberations. Of the 2,453 proposals received, a total of 144 Phase I contracts were awarded. No proposals submitted under category TRP 93–003 were recommended for a Phase I award.

### IV. Plaintiff's Claim

After receiving notice from DARPA that its proposal had not been selected for a Phase I contract, plaintiff filed suit in this court seeking damages for breach of implied contract and breach of implied covenant of good faith and fair dealing. Plaintiff also sought declaratory and injunctive relief.

Plaintiff alleged that there existed an implied contract between plaintiff and defendant by virtue of defendant's solicitation for candidates to submit a proposal for the development of the software process technology and plaintiff's submission of a proposal in reply. Plaintiff alleged that in return for its submission of a proposal, defendant had a duty to employ individuals knowledgeable in the particular software process area to evaluate its proposal, and that defendant breached the implied contract by failing to do so and by arbitrarily and capriciously rejecting plaintiff's proposal. Plaintiff sought damages for loss of future earnings, strategic business damage, expenses in preparing the proposal, and attorney's fees.

### DISCUSSION

### I. Summary Judgment

 Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c). RCFC 56 is patterned after Rule 56 of the Federal Rules of Civil Procedure and is similar in language and effect. A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Chevron U.S.A., Inc. v. United States,* 17 Cl.Ct. 537, 540 (1989), *rev'd on other grounds,* 923 F.2d 830 (Fed.Cir. 1991). When the moving party has met its burden, the burden shifts to the non-moving party to provide facts establishing that a genuine issue for trial exists, *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), and the non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses. *See Willetts v. Ford Motor Co.,* 583 F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley,* 514 F.2d 971, 976 (3rd Cir.1975). Disputes over facts which are not outcome determinative will not preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

 In the instant case, the parties have filed cross motions for summary judgment. The court's duty to decide whether summary judgment is appropriate is not abrogated by the fact that both parties argue in favor of summary judgment and allege that there are no genuine issues of fact for trial. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)); *see also Bataco Indus. Inc. v. United States,* 29 Fed.Cl. 318, 322 (1993) (citing *Prineville,* 859 F.2d at 911). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3rd Cir.1968); *Bataco Indus., Inc. v. United States,* 29 Fed.Cl. 318, 322 (1993), *aff'd* 31 F.3d 1176 (Fed.Cir. 1994). The court must take care to draw reasonable inferences against the moving party, and must evaluate each party's motion on its own merits. *Mingus,* 812 F.2d at 1391.

## II. Future Earnings and Business Damage

 In its complaint, plaintiff asserted it suffered a great loss of future earnings and business damages as a result of defendant's breach of implied contract and breach of implied covenant of good faith. Contract law, however, does not permit such a genre of recovery. Plaintiff is not entitled to anticipatory profits under a contract that never came into existence. *Keco Indus., Inc. v.*

United States, 428 F.2d 1233, 192 Ct.Cl. 773, 784 (1970) (*Keco I* ) (citing *Heyer Prods. Co. v. United States,* 140 F.Supp. 409, 135 Ct.Cl. 63, 69 (1956)). Moreover, under the law of government contracts, plaintiff would not be entitled to unearned income or profit for unperformed work even if a contract did exist upon which profits could be accurately measured. *Mega Const. Co., Inc. v. United States,* 29 Fed.Cl. 396, 475 (1993). Damages to a disappointed bidder may be based on his reliance interest, not his expectation interest. *La Strada Inn, Inc. v. United States,* 12 Cl.Ct. 110, 115 (1987) (citing RESTATEMENT (SECOND) OF CONTRACTS § 344 at 102–03 (1981)). Accordingly, because this Court may not award unearned income or anticipatory damages, it rejects plaintiff's claim for future earnings and business damages.

## III. Bid Protest and Preparation Costs

 Plaintiff sought recovery of bid protest and preparation costs based on its assertion that the government breached an implied contract with plaintiff and an implied covenant of good faith and fair dealing. Specifically, plaintiff alleged the government breached an implied contract to evaluate the proposal fairly by failing to select at least two individuals [2] to evaluate the proposal who were capable of understanding the proposal's technical aspects, and by failing to articulate a reasonable basis for rejecting plaintiff's proposal. According to plaintiff, only one of the five evaluators was capable of assessing a software process technology proposal, the focus of topic 93–003.

 Normally, when an effort to obtain a contract is unsuccessful, the expenses incurred in preparing the bid proposal are an unrecoverable cost of doing business. *Lincoln Servs., Ltd. v. United States,* 678 F.2d 157, 230 Ct.Cl. 416, 417 (1982). The government, however, is bound by an implied contractual duty to fairly and responsibly consider all responsive bids when it issues a solicitation. *See United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1367 n. 8 (Fed.Cir. 1983). On a claim that due consideration was

---

**2.** Plaintiff derived this requirement from a letter it received from DARPA dated March 22, 1994, stating that each of the over 2,450 proposals received was evaluated by at least two evaluators.

not accorded to a particular bid, the disappointed bidder must demonstrate that the government acted arbitrarily and capriciously toward the bidder in the selection process. *See Keco Indus., Inc. v. United States,* 492 F.2d 1200, 203 Ct.Cl. 566, 574 (1974) (*Keco II*); *Keco I,* 192 Ct.Cl. at 784.

The *Keco II* court enunciated four factors that this court must consider when determining whether the government acted arbitrarily or capriciously toward a bidder-claimant: (1) whether there was subjective bad faith on the part of the procuring officials that deprived the bidder of fair and honest consideration of its proposal; (2) whether there was a reasonable basis for the government's decision; (3) the degree of discretion given to the procurement officials by applicable statutes and regulations which, under *Keco II,* determines the degree of proof of error necessary for recovery; and (4) whether government officials violated pertinent statutes or regulations, which, if violated, may form the basis for recovery, but which need not automatically constitute grounds for such recovery. *Keco II,* 203 Ct.Cl. at 574.

In analyzing the first criterion, whether subjective bad faith existed on the part of the procuring officials, this court must presume that public officials act "conscientiously in the discharge of their duties." *Kalvar Corp. v. United States,* 543 F.2d 1298, 211 Ct.Cl. 192, 198 (1976), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977) (quoting *Librach v. United States,* 147 Ct.Cl. 605, 612, 1959 WL 7633 (1959)). It requires "well-nigh irrefragable proof" to overcome this presumption of good faith. *Kalvar,* 211 Ct.Cl. at 192 (quoting *Knotts v. United States,* 121 F.Supp. 630, 128 Ct.Cl. 489, 492 (1954)). Irrefragable proof has normally been equated with a showing of specific intent to injure the plaintiff. *Kalvar,* 211 Ct.Cl. at 199. Plaintiff presents no evidence, let alone irrefragable proof, from which this court could draw even an inference of bad faith. In light of the high standard of proof required, plaintiff has failed to demonstrate that the procuring officials acted with bad faith.

Criteria two and three are most logically addressed together. Under the second criterion, plaintiff may be relief if it can demonstrate that the governmental agency lacked a reasonable basis for its action in the procurement process. The level of proof required to show that a decision was made without basis under the second criterion is established by the third criterion: it is related to the amount of discretion entrusted to the procurement officials. Courts have interpreted the *Keco II* decision to stand for the principle that the amount of proof needed to show the government official made a decision without reasonable basis is related to the amount of discretion granted to the contracting officer. *Hayes Int'l Corp. v. United States,* 7 Cl.Ct. 681, 685 (1985); *Lincoln Servs.,* 230 Ct.Cl. at 427.

To prove an arbitrary or capricious action under the second and third criterion, a claimant must specify an action and demonstrate that it was arbitrary or capricious in light of the discretion given to the official or officials responsible for it. The solicitation's relevant provisions with respect to the evaluation of proposals included only a list of evaluation criteria, a statement that technical reviewers would be used, and a warning that evaluators may not necessarily be familiar with referenced experiments. The solicitation's failure to contain strict parameters within which technical reviewers were forced to operate created a great deal of latitude for officials involved in the evaluation.

Moreover, the court should refrain from substituting its analysis for that of defendant on matters within the area of competence of an administrative agency created by the Congress, and should refrain from interfering when resolution of a factual question depends on engineering and scientific considerations. *Federal Power Comm'n v. Florida Power & Light Co.,* 404 U.S. 453, 463, 92 S.Ct. 637, 643, 30 L.Ed.2d 600. Accordingly, this court is in no position to challenge the technical merit of any comments made on the evaluation sheets [3] or decisions made during the

---

3. It is worth noting that a primary purpose of the evaluation sheets was to provide evaluators with guidelines from which they may consider proposals. They were not final scoresheets, and no written opinion contained therein can be deemed wrong or right. The sheets in this case were

several stages of evaluation. In exercising judicial restraint, the court should "recognize the relevant agency's technical expertise and experience, and defer to its analysis unless it is without substantial basis in fact." *Id.* In this joint program solicitation, the collaborating agencies chose their evaluators based on their own perceived needs, and gave their evaluators the discretion to recommend or not recommend proposals. These recommendations were considered by review panels before a final decision was made. Clearly, there existed a well-established basis from which a contractual decision could be made.

Plaintiff offered no substantive evidence to indicate that any decisions were made outside of an agency's or official's discretion, and failed to demonstrate that defendant made decisions absent a reasonable basis. Rather, plaintiff complained that defendant's discretion in choosing evaluators was "too broad," and that defendant was mistaken in believing that such discretion justified its decision to award no contracts in category TRP 93–003 without providing what plaintiff perceived to be a reasonable, articulated explanation. However, the issue is not whether a particular agency or officer had too much discretion, as plaintiff seems to suggest, but whether given the amount of discretion that the solicitation afforded the procurement officials, it can be shown that an agency's or official's actions were so unreasonable as to constitute an abuse of discretion. The greater the discretion afforded a contracting official, the higher the standard of proof required to demonstrate arbitrariness or capriciousness. Plaintiff failed to specify and adequately discuss a specific action on the part of defendant. Conclusory statements that the defendant's discretion was "too broad" and that it chose non-experts as evaluators fail to persuade this court that arbitrary or capricious decision-making occurred during the procurement process.[4]

The fourth criterion allows plaintiff to recover bid preparation costs if it successfully proves there was a clear and prejudicial violation of a statute or regulation in the government's rejection of a proposal. *Keco II*, 203 Ct.Cl. at 574; *Aviation Enter., Inc. v. United States*, 8 Cl.Ct. 1, 19–20 (1985). A violation does not per se provide a basis for recovering costs; the violation must effectively deny the bidder the "impartial consideration to which it was entitled under the implied contract obligations of the government." *Arrowhead Metals, Ltd. v. United States*, 8 Cl.Ct. 703, 714 (1985) (citation omitted).

Plaintiff infers that defendant violated the Federal Acquisition Regulations by failing to follow government contracting procedures as defined in 48 C.F.R. § 15.609–15.610. This court finds no such violations. Section 15.610(b) states "the contracting officer shall conduct written or oral discussion with all responsible offerors who submit proposals within the competitive range." But as plaintiff notes to his detriment, no such obligation is imposed if the solicitation indicates that an award may be made without discussion. 48 C.F.R. 15.610(a)(3)(i). The TRP SBIR solicitation states that its technical reviewers would base conclusions only on information contained in the proposal.

Section 15.609(a) states in part that "the competitive range.... shall be determined on the basis of cost or price and other factors that were stated in the solicitation ..." 48 C.F.R. § 15.609(a). Plaintiff's argument that this section was violated fails for two reasons. First, the solicitation clearly indicated that cost would be considered in light of the technical merit of each proposal, stating "where technical evaluations are essentially equal in merit, cost to the government will be considered in determining the

---

used for discussion purposes by the TRP SBIR review panel.

4. Finally, plaintiff cited as evidence of abuse of discretion the fact that no contracts were awarded in category TRP 93–003, and that defendant gave no reasonable, articulated basis for this decision. This argument is weakened by the fact that the solicitation clearly indicated that con-

tracts would not necessarily be awarded in all proposal areas, and that as a matter of law, the government retains, in its discretion, the right to reject all bids without any liability. Robert F. Simmons & Assocs. v. United States, 175 Ct.Cl. 510, 360 F.2d 962 (1966). Furthermore, plaintiff has no standing to dispute the government's evaluation of proposals submitted by other bidders.

successful offeror." Thus, if an evaluator had determined that a proposal's technical merit was comparatively weak, there would be, logically, no extensive cost analysis. Second, the evaluation sheets represent only a portion of the overall consideration plaintiff's proposal received, and this court is not in a position to speculate on the criteria defendant used at the different levels of its decision-making process. The court finds that defendant committed no statutory or regulatory violations in its rejection of plaintiff's proposal. Plaintiff therefore was not denied impartial consideration.

## IV. Injunctive Relief

Plaintiff sought to enjoin defendant from awarding any contract until plaintiff's proposal is re-evaluated by a different group of experts, and demanded that defendant certify to the court that it has retained a more knowledgeable group of evaluators to review proposals in the software process field.

The court's review of a plaintiff's claim for injunctive relief should be reviewed through the same narrow lens that is used to consider claims for bid preparation costs. A great deal of respect should be accorded to the agency's decision-making process, because of the wide discretion given to contracting officers in conducting the bid evaluation process. *See RADVA Corp. v. United States*, 17 Cl.Ct. 812, 818 (1989), *aff'd*, 914 F.2d 271 (Fed.Cir.1990). This court refuses to substitute its judgment on matters before the agencies in question absent a clear showing by plaintiff of an irrational or unreasonable decision. As discussed above, plaintiff has failed to demonstrate such, and therefore injunctive relief is denied.

## CONCLUSION

The court denies plaintiff's motion for summary judgment and grants defendant's cross motion for summary judgment.

**IT IS SO ORDERED.**