**Meir DUBINSKY, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**Daktronics, Inc., Defendant–Intervener.**

**No. 99–191C.**

United States Court of Federal Claims.

Aug. 3, 1999.

Meir Dubinsky, Niles, Illinois, plaintiff pro se.

Katherine A. Barski, U.S. Department of Justice, Washington, D.C., with whom was John Lariccia, U.S. Department of the Air Force, Arlington, Virginia, for defendant. Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, and Assistant Director Harold D. Lester, Jr., U.S. Department of Justice, Washington, D.C., appeared on the briefs.

Roberto A. Lange, Sioux Falls, South Dakota, for defendant-intervenor.

## ORDER ON APPLICATION
## FOR INJUNCTION

BRUGGINK, Judge.

Pending in this post-award[1] bid protest are the parties' cross-motions for summary judgment. The protest challenges a procurement conducted by the United States Air Force Academy ("Academy") in Colorado. The subject matter of the procurement is an electronic scoreboard to replace the existing scoreboard at Falcon Stadium, the Academy's football stadium. Plaintiff, who appears *pro se*, is the sole proprietor of Nu–Way Signs Company ("Nu–Way"), one of the companies that submitted quotations relating to this procurement.

The court recently adjudicated a bid protest filed by the same plaintiff in relation to a prior incarnation of this procurement. In that earlier protest, the court granted plaintiff's motion for summary judgment, enjoined the award to the defendant-intervener, Daktronics, Inc. ("Daktronics"), ordered re-solicitation, and awarded plaintiff proposal preparation costs, after finding numerous errors in the procurement process. *See Dubinsky v. United States*, No. 98–884C (Fed.Cl. Feb. 12, 1999). The court issued a redacted opinion on March 31, 1999 explaining in detail the reasons for its holding that the Academy's award to Daktronics was arbitrary and capricious, and ruling on the quantum of plaintiff's application for proposal preparation costs. A subsequent opinion granted plaintiff his proposal preparation costs. *See Dubinsky v. United States*, 43 Fed.Cl. 243 (1999), *appeal filed*, No. 99–5107 (Fed.Cir. June 1, 1999). We also granted in part plaintiff's ensuing application for costs and expenses under the Equal Access to Justice Act. *See Dubinsky v. United States*, 44 Fed.Cl. 360 (1999).

## BACKGROUND

The present procurement is the Academy's second attempt to procure a scoreboard for Falcon Stadium. The agency issued solicitation number F05611–99–T–0821 as a request for quotations ("RFQ") on March 16, 1999. The RFQ established March 31, 1999 as the deadline for receipt of quotations. Two solicitation amendments were issued by the Academy prior to that deadline. The first established a cut off date for offerors' questions; the second extended the deadline for receipt of quotes to April 7, 1999.

Plaintiff filed his original complaint on April 1, 1999, as a pre-award protest challenging the RFQ's over-emphasis on past performance, and asserting that contract award would be premature, in light of plaintiff's pending appeal of this court's earlier decision. We denied plaintiff's request for a temporary restraining order ("TRO") and preliminary injunction after defendant informed the court that it had issued a third amendment replacing the RFQ in its entirety.[2] Amendment 3, issued on April 1, deleted all references to past performance and instead stated that "award will be made to the quoter offering the best value based on evaluated lowest price, whose quote is technically acceptable (LPTA). Quotes will be evaluated for acceptability but not ranked. To be technically acceptable, the quoter shall address all areas defined in this [RFQ]." Admin. R. tab 23 at 5. The amended RFQ reset the deadline for submission of quotations to April 12, 1999.

Amendment 4, issued on April 9, 1999, made one minor technical clarification and extended the deadline for receipt of quotations to April 16, 1999. On April 13, 1999, plaintiff filed an amended complaint alleging numerous ambiguities in the reissued RFQ. On April 30, 1999, in response to defendant's motion to dismiss the amended complaint for failure to state a claim, plaintiff requested

---

1. Plaintiff's original complaint was filed prior to award. The court has permitted plaintiff to amend his complaint on three occasions, once before award and twice after. Plaintiff's complaint, as amended, now constitutes a post-award protest.

2. Amendment 3 was issued in response to this court's opinion, issued under seal on March 25, 1999, granting plaintiff's protest of the first procurement. That opinion directed the agency to notify offerors of its election to invoke the FAR subpart 13.5 test program and simplified acquisition procedures, if the agency chose to follow this method of procurement. *See Dubinsky*, 43 Fed.Cl. at 276.

leave to stay his complaint until after contract award.

The Academy awarded Contract No. F05611–99–CM–503 to Daktronics on May 5, 1999. Thereafter, plaintiff requested leave to amend his complaint for a second time and renewed his request for a TRO and a preliminary injunction. The court granted plaintiff leave to amend his complaint, denied the request for a TRO, and directed defendant to prepare an administrative record. The second amended complaint alleges a plethora of violations of procurement regulations by the Academy during the contract award process, most of which were directed at the agency's improper evaluation of Daktronics' quotation. The court convened a telephone status conference on June 4, 1999, to address plaintiff's request for a preliminary injunction. During that conference, plaintiff conceded that he had not seen the contract or Daktronics' quotation and that his post-award protest allegations concerning Daktronics' quotation were based on the "[h]istory of Daktronics and knowing the product that they're selling." Tr. at 7 (June 4, 1999). Because many of plaintiff's objections to the contract award were plainly groundless and the remainder were based on mere speculation, and because defendant raised a facially credible challenge to the bona fides of plaintiff's quotation, we concluded that there was no evidence to support plaintiff's assertion that he was likely to succeed on the merits of his protest. Accordingly, we denied his renewed request for a preliminary injunction on June 7, 1999.

Plaintiff amended his complaint for a third time on June 11, 1999, to raise an additional allegation that the Academy improperly failed to apply an SDB price evaluation preference to his offered prices, and to renew his request for injunctive relief. The court allowed the amendment to be filed but denied the request for injunctive relief,·without prejudice, because the administrative record had not yet been filed. The administrative record was filed with the court on June 16, 1999.

Thereafter, the parties briefed cross-motions for summary judgment. The court heard oral argument on July 30, 1999.

## DISCUSSION

The matter is once again before the court in a new protest by plaintiff of the re-selection of Daktronics. Because the court declined plaintiff's requests for preliminary injunctive relief, Daktronics commenced demolition of the old scoreboard and construction of a new foundation and sign. During oral argument on the pending motions, counsel for the Air Force and for defendant-intervener represented that demolition is complete, the new foundation and pole are in place, and the sign is largely complete, although not installed. For the reasons explained at the conclusion of oral argument, the court finds that the Daktronics proposal did not fully comply with all the material terms of the solicitation. As the court explained, plaintiff raised a number of asserted deficiencies in Daktronics' proposal. The court rejected virtually all of those arguments.[3] As to

---

**3.** As well as the suggestion that plaintiff was entitled to consideration as a small disadvantaged business ("SDB"). The solicitation was misleading in that it suggested, erroneously, that the award would give price consideration to whether a proposer was entitled to that status. The Director of Defense Procurement suspended the use of price evaluation adjustments for offers submitted by SDBs on February 1, 1999. *See* 64 Fed.Reg. 4847 (1999). That suspension took effect on February 24, 1999. *See id.* at 4848.

Plaintiff's initial quotation disavowed any entitlement to SDB status. In his final quotation, however, he claimed SDB status. He represents to the court that he self-certified as an "individual who is not a member of one of the groups presumed to be socially disadvantaged." *See* 13 C.F.R. § 124.103(c) (1998). To be eligible for the price advantage that status might have af-

forded, the certification would have had to be approved prior to award. *See* 48 C.F.R. § 52.219–23(a)(2). Plaintiff was not certified by May 5, 1999, the date of award. Moreover, although plaintiff stated in his request for summary judgment that he "relied on the expectation" of receiving an SDB evaluation preference, he has not represented what his bid would have been but for the mistake.

In addition, the court notes that his entitlement to an SDB preference is questionable, at least in part. The applicable clause states that a SDB offeror "agrees to furnish ... only end items manufactured or produced by small disadvantaged concerns in the United States." *Id.* 52.219–23(d)(2). Plaintiff thus bore the responsibility of offering signs manufactured only by other SDB concerns. Yet, at least two of the four products quoted by plaintiff were manufactured

two issues, however, Daktronics' offer remains deficient for the same reasons explained in the court's decision relating to the first solicitation. The warranty offered does not meet the terms of the solicitation, and the proposal gives no assurance that "customized lettering shall be translucent white." The court identified these defects before, see Dubinsky, 43 Fed.Cl. at 268–69, 271, 274, and they remain uncorrected. It is no answer to suggest, as Daktronics does, that this is a highly technical area in which the court should defer to the agency. As became apparent during oral argument, the agency has presented no coherent explanation to which the court could possibly defer. The attempted explanations were either totally off the mark or involved contorting the language of Daktronics' offer. Daktronics' quotation thus failed to comply with two mandatory specifications.

■ Nor is it an answer to say that these deficiencies are de minimis. As this court explained in Beta Analytics Int'l, Inc. v. United States, 44 Fed.Cl. 131 (1999), "if a protestor can demonstrate an instance in which a procuring official failed to abide by a mandatory solicitation provision, the protestor will prevail, provided it can demonstrate that, but for the violation, it had a substantial chance to receive the award." Id. at 138. The court cited Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365 (Fed.Cir. 1999), a case in which the Federal Circuit addressed a similar argument. The court affirmed the trial court's holding that " 'regardless of the [review] panel's view of the appropriateness of the standard [set out in the RFP], the Navy is strictly bound by its terms.' " Id. at 1368 (quoting Alfa Laval Separation, Inc. v. United States, 40 Fed.Cl. 215, 230 (1998)). The Federal Circuit held that the Navy violated a clearly applicable procurement statute and regulation by waiving a portion of a mandatory technical requirement for the selected awardee. See id. In so doing, the court implicitly rejected adopting a de minimis exception for mandatory requirements.

■ The Government and Daktronics have not made the argument that plaintiff did not have a substantial chance to receive the award. They have not argued that his proposal was deficient in any way or denied that it was the next lowest bid. The court thus concludes that the Academy's decision to award the contract to Daktronics was arbitrary and capricious. In short, plaintiff is positioned to receive injunctive relief, assuming other factors permit it.

■ The more difficult question is whether injunctive relief is appropriate. Plaintiff is correct that, if the court had made the findings it made at oral argument at the time he asked for a preliminary injunction, the Air Force could, and perhaps should, have been enjoined from permitting Daktronics to commence work. In that event, the court would not be faced now with the practical consideration that injunctive relief would either be gross economic waste, or virtually moot, if the court merely permitted plaintiff to complete remaining performance. While monetary relief other than bid preparation and proposal costs would appear to be a logical alternative, it is precluded by the applicable statute. See 28 U.S.C. § 1491(b)(2) (Supp. II 1996).

Thus, although plaintiff's observation is correct, it does not alter the fact that an injunction is no longer appropriate for two reasons. The first is that the work is substantially performed, and inserting the plaintiff into the contract at this point would mean either that it would have virtually nothing left to perform, or that the Academy would pay twice for some or all of the work. The court declines to do either. The former affords no meaningful relief to plaintiff; the latter is not, on balance, in the public interest.

The second reason is related to the point that defendant makes, namely that an injunction is an equitable remedy, and requires the court to consider whether plaintiff has "done equity." Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co, 324

---

by non-SDB concerns: quotes "A" and "B" offered signs manufactured by Daktronics. See text infra p. 512. Daktronics was neither a small business nor an SDB. See Admin. R. tab 19 (Daktronics' representations pursuant to FAR 52.212–3(c)(1), (2)).

U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *see also Dyn Logistics Servs., Inc. v. United States,* 6 Cl.Ct. 353, 366–61 (1984). The court agrees with defendant that he has not, in one relevant respect.

Plaintiff's proposal offered four alternative products, two of which he had no reason to believe he could supply. Both of these options involved plaintiff furnishing a sign manufactured by Daktronics. Contrary to plaintiff's contention at oral argument, he specifically represented that "Daktronics ... will be utilized ... on a subcontractor basis." Pl.'s Apr. 23, 1999 Quotation at 4, Admin. R. tab 16. In fact, not only had plaintiff not secured a quotation or a conditional arrangement with Daktronics, he had been informed by Daktronics in writing that "[s]ince we are quoting directly to the Academy, we are declining any requests for quotations related to this project." Letter from Jeremy Johnson to Meir Dubinsky, Mar. 30, 1999, Admin. R. tab 6. In the circumstance that plaintiff had specifically been rebuffed in getting a quotation from Daktronics, the material mis-impression created by the proposal precludes equitable relief. *See also supra* note 3.

Accordingly, plaintiff's motion for summary judgment is granted as to liability and denied as to injunctive relief. Defendant's motion for summary judgment is denied. Plaintiff is entitled to only monetary relief. Such relief is limited to bid preparation and proposal costs by statute. *See* 28 U.S.C. § 1491(b)(2). Plaintiff is granted his proven, allowable costs associated with the preparation of the three proposals he submitted in this second procurement for the electronic scoreboard. Plaintiff shall file a verified statement of those costs on or before September 10, 1999. Defendant will respond to that submission within twenty-one days of service. Plaintiff may reply to defendant's response within fourteen days of service. Final judgment will be entered at that time.