**MANGI ENVIRONMENTAL GROUP, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant**

**No. 00–29 C.**

United States Court of Federal Claims.

Filed May 31, 2000.

Reissued for Publication on June 29, 2000 [1].

1. This order was originally filed under seal on May 31, 2000 in accordance with the court's January 27, 2000 protective order in this matter. Pursuant to a January 27, 2000 order, the court allowed the parties to advise as to the portions of this order that should be redacted for publication. Redactions suggested by the parties have been incorporated into the order, and the redacted order is issued for publication this date, June 29, 2000.

John R. Tolle, McLean, VA, with whom were J. Patrick McMahon and William T. Welch, for plaintiff.

Matthew P. Reed, Washington, D.C., with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, and Assistant Director Todd M. Hughes, for defendant. Marion Cordova, U.S. Department of Agriculture, Washington, D.C., of counsel.

## ORDER

MOODY R. TIDWELL, III, Senior Judge.

This post-award protest comes before the court on cross-motions for judgment on the administrative record. Plaintiff, Mangi Environmental Group, Inc. (Mangi), contests the decision of the United States Department of Agriculture, Forest Service (Forest Service), to award a contract to Statistical Research, Inc. (SRI) to provide administrative services and to act as a Volunteer Clearinghouse for the Passport in Time (PIT) program. Plaintiff seeks declaratory and injunctive relief on the grounds that the Forest Service violated procurement statutes and regulations and acted in an arbitrary and capricious manner by awarding the contract to SRI. After careful consideration of the briefs filed by the parties and for the reasons set forth below, the court grants plaintiff's motion for judg-

ment on the administrative record and denies defendant's motion for judgment on the administrative record. The court further concludes that plaintiff is entitled to permanent injunctive relief as described below.

## BACKGROUND

The facts are set forth in the Administrative Record filed with this court on February 2, 2000, and are summarized as follows. On April 12, 1999, the Forest Service issued Solicitation No. WO–99–02 for competitive proposals from small business offerors for a contract to act as the Volunteer Clearinghouse for the PIT program. The PIT program is a Forest Service volunteer program providing opportunities to individuals and families to work with professional archaeologists and historians on historic preservation projects in national forests and grasslands nationwide. The projects include archaeological excavation, historic structure restoration, rock art recordation, archaeological surveys, archival research, interpretive display development and oral history. As stated in the solicitation, the function of the Volunteer Clearinghouse is to provide administrative services including, but not limited to, the development, production and distribution of the PIT Traveler, a bi-annual newsletter which announces volunteer opportunities; the development and maintenance of databases of volunteers and projects; maintaining an 800 phone number; designing, implementing and managing a web page and an internet address; responding to inquiries regarding volunteer services; accepting volunteer applications and coordinating volunteer applications with PIT project leaders; and responding to media requests for information. The solicitation described the contract as a firm, fixed-price contract with a base performance period of one-year plus four, one-year options.

The Forest Service received four responses to the solicitation. Of these four, only Mangi and SRI remained in the competitive range as of September 22, 1999, and were asked to submit Best and Final Offers (BAFO) by September 27, 1999. On or about October 4, 1999, the Forest Service

awarded the contract to SRI, the incumbent contractor.

Section M of the solicitation detailed the method of selection and evaluation criteria for the proposals. The solicitation specifically provided that selection for award of the contract would be made to the offeror whose proposal represented the best overall value to the government, with cost being considered secondary to the technical proposal. The solicitation also explained that award would be made to the offeror (1) whose proposal was technically acceptable and (2) whose technical/cost relationship was the most advantageous to the government.

The technical proposals were to be evaluated to determine both the offeror's technical capability and the soundness of their approach. Factors to assess technical capability included experience with providing volunteer program services, past experience and references, past publication experience, database experience, web page development experience, key personnel and membership in professional archaeological or historic preservation associations. The assessment of soundness of approach was based on adequacy of overall approach, customer service ethic, volunteer services, PIT traveler, databases, and web page. Technical capability and soundness of approach were considered equal in importance, however, the subfactors received various weightings and are listed above in descending order of importance. The proposals were evaluated using a point rating which was assigned to each factor and an overall technical consensus rating was determined and assigned by the Technical Evaluation Team (TET) for each offer.

Out of 348 total points available, Mangi's initial proposal scored [* * *][2] and SRI's initial proposal scored[* * *]. The TET's October 1, 1999, review of the BAFOs concluded that (1) Mangi's BAFO did not raise the quality of their proposal to the level required to maintain the quality of service expected under the contract and (2) SRI continued to exhibit excellent understanding of the magnitude of the PIT program and

attention to customer service. Mangi's BAFO proposed a cost of [* * *] for the base year, and SRI's BAFO proposed a cost of $154,441.08 for the base year. In spite of SRI's higher cost proposal, on October 4, 1999, the Forest Service awarded the contract to SRI, reflecting the Forest Services' view of the best overall value to the government.

The Forest Service debriefed Mangi on its proposal on October 19, 1999. Plaintiff filed a formal bid protest with the General Accounting Office (GAO) on October 22, 1999, and a supplemental protest on December 9, 1999. However, on January 18, 2000, plaintiff withdrew its protest before the GAO and filed suit in this court the following day.

In its complaint, Mangi alleges that the Forest Service violated various procurement statutes and regulations and acted in an arbitrary and capricious manner when it (1) awarded the contract to an offeror whose proposal was technically unacceptable under the terms of the solicitation because the proposal failed to identify or include a resume for the volunteer coordinator and (2) found SRI's proposal to be the best value to the government based on a flawed cost/technical tradeoff. Plaintiff asks the court to (1) permanently enjoin performance of the contract with SRI; (2) declare (a) that the Forest Service unlawfully awarded the contract to SRI; (b) the contract null, void and without legal effect; (c) that Mangi is next in line for award and that the Forest Service should properly award the contract to Mangi; and (3) award proposal preparation costs as well as attorneys fees and costs for maintaining this action pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 (1999).

Also on January 19, 2000, in separate motions, plaintiff sought preliminary injunctive relief and a temporary restraining order (TRO). In a telephonic status conference held on January 21, 2000, plaintiff agreed to withdraw its motions for a preliminary injunction and TRO if the government would suspend award of the contract, and instead, issue a three-month bridge contract to the

**2.** Upon request of the parties, protected information has been replaced by asterisks within brack-

ets in the published version of this order.

incumbent contractor pending the outcome of this litigation. The parties also agreed to the contents of the administrative record and deemed additional discovery unnecessary. On January 27, 2000, the court issued a protective order to be used in these proceedings.

On February 11, 2000, both defendant and plaintiff filed cross-motions for judgment upon the administrative record. Plaintiff argues that summary judgment is appropriate because the Forest Service (1) violated procurement statutes and regulations by awarding the contract to an offeror whose proposal failed to meet mandatory requirements of the solicitation and (2) failed to justify the [* * *] price premium attached to SRI's proposal in its best value analysis, or lack thereof, of the technical differences between the two proposals. Defendant argues that summary judgment in its favor is appropriate because the agency's cost-benefit analysis was reasonable and award of the contract to SRI was rational and consistent with procurement statutes and regulations.

## DISCUSSION

### I. Judgment on the Administrative Record

The court decides this case on cross-motions for judgment on the administrative record. Motions for judgment on the administrative record are reviewed under the same standards as motions for summary judgment. *See* RCFC 56.1. Consequently, judgment on such motions is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is considered material if it might significantly affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505. In deciding a motion for judgment on the record, the role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505.

The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *See Prineville Sawmill Co., Inc. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987)); *see also Compubahn, Inc. v. United States*, 33 Fed. Cl. 677, 680 (1995). Summary judgment will not necessarily be granted to one party or another simply because each has moved for summary judgment. *See Corman v. United States*, 26 Cl.Ct. 1011, 1014 (1992) (citing *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692–93 (4th Cir. 1968)). A cross-motion is a party's claim that it alone is entitled to summary judgment. *See Corman v. United States*, 26 Cl. Ct. at 1014; *Compubahn, Inc. v. United States*, 33 Fed.Cl. 677 (1995). It therefore does not follow that if one motion is rejected, the other is necessarily supported. Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *See Mingus Constructors, Inc.*, 812 F.2d at 1391.

### A. The Standard of Review

■ The court's jurisdiction over post-award bid protests is provided for by the Tucker Act, 28 U.S.C. § 1491(b) (1994 & Supp.1997). The Tucker Act directs this court to review an agency's decision pursuant to the standards prescribed in the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A) (1994). *See* 28 U.S.C. § 1491(b)(4). Specifically, the court is authorized to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a) (1994); *See Miller–Holzwarth, Inc. v. United States*, 42 Fed.Cl. 643, 649 (1999). Generally, review of a post-award bid protest action is based on the administrative record developed by the relevant contracting agency, which in this case is the Forest Service.

■ The arbitrary and capricious standard is highly deferential. The reviewing court cannot substitute its judgment for that of the agency; rather, the court reviews the facts to determine whether the agency's deci-

sion was legally permissible, reasoned, and factually supported. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). If the procurement official examined the relevant factors and articulated a rational basis for the decision, the agency's action must be upheld. *See Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *see also Delbert Wheeler Const., Inc. v. United States,* 39 Fed.Cl. 239, 247 (1997).

In evaluating whether an agency has acted arbitrarily or capriciously, the court considers whether: (1) there was subjective bad faith on the part of procurement officials; (2) there was not a reasonable basis for the procurement decision; (3) the procuring officials abused their discretion; and (4) pertinent statutes or regulations were violated. *See Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1203–04 (1974); *see also Delbert Wheeler Const., Inc.,* 39 Fed. Cl. at 239. Additionally, for the protestor to prevail where the agency has committed error in the procurement process, the protestor must show that the error was significant and prejudicial. *See Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed. Cir.1999) (citing *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996) and *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1582 (Fed.Cir.1996)). To show prejudice, a protestor must establish there was a substantial chance that it would have received the contract award but for the agency's error. *See Alfa Laval Separation, Inc.,* 175 F.3d at 1367 (quoting *Statistica, Inc. v. Christopher,* 102 F.3d at 1582). A protestor's burden of proof is great in negotiated procurements because the contracting officer is entrusted with a relatively high degree of discretion. *See LaBarge Prods., Inc. v. West,* 46 F.3d 1547, 1555 (Fed.Cir.1995) (citing *Burroughs Corp. v. United States,* 223 Ct.Cl. 53, 617 F.2d 590, 598 (1980)). Small, harmless errors made by the procuring agency are not sufficient grounds for rejecting an entire procurement. *See E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed.Cir.1996) (quoting *Grumman Data Sys. Corp. v. Widnall,* 15 F.3d 1044, 1048 (Fed.Cir.1994)). Finally, in reviewing a government procurement, the court should defer to an agency decision that is "grounded in reason" even if the court itself might have chosen a different bidder. *See E.W. Bliss Co.,* 77 F.3d at 449.

### 1. Cross-motions for Judgment on the Administrative Record

Plaintiff's motion for judgment on the administrative record is premised on the following two arguments. Plaintiff argues that summary judgment is appropriate because the Forest Service (1) violated procurement statutes and regulations by awarding the contract to an offeror whose proposal failed to meet mandatory requirements of the solicitation and (2) failed to justify the [\* \* \*] price premium attached to SRI's proposal in its best value analysis, or lack thereof, of the technical differences between the two proposals. In its cross-motion for judgment on the administrative record, defendant argues that the Forest Service's award of the contract to SRI was rational, the cost-benefits analysis was reasonable and SRI's failure to include a resume for the volunteer coordinator in its proposal should not disqualify SRI's proposal from consideration.

### a. Evaluation of the Technical Proposals

Both parties' arguments focus on whether the Forest Service violated the terms of the solicitation, thereby violating procurement statutes and regulations, when it selected SRI's proposal for award. More specifically, plaintiff alleges that the Forest Service violated provisions of the Federal Acquisition Regulations (FAR) by improperly crediting SRI's proposal with meeting the technical requirements of the solicitation when the proposal failed to identify the volunteer coordinator and provide a resume. Plaintiff argues that the solicitation mandated the identification of the volunteer coordinator and submission of that individual's resume in the offeror's proposals, and that by not doing so SRI's proposal was technically unacceptable and should not have been considered for award. Based on the alleged deficiencies in SRI's proposal and contract award to SRI, plaintiff claims that the Forest Service did not evaluate the proposals based solely on

the factors and subfactors specified in the solicitation as is required by 10 U.S.C. § 2305(b)(1) (1994) and FAR §§ 15.303(b), 15.305(a), 15.308 (1999).

Defendant contends that SRI's proposal was technically acceptable because (1) the proposal adequately informed the government of the identities of all key personnel, including the volunteer coordinator; (2) the technical proposal instructions contained in Section L of the solicitation recommended, but did not require, that proposals include resumes for key personnel; and (3) the purpose of Section M of the solicitation was to identify for offerors the criteria upon which proposals would be evaluated rather than to establish the technical requirements for the proposals. Defendant claims that SRI more than satisfied the solicitation's requirements by identifying the individual who would temporarily serve as the volunteer coordinator and explaining the qualifications of any substitute coordinator in its proposal.

The threshold issue is whether the solicitation mandated that a volunteer coordinator be named and a resume provided for a proposal to be technically compliant and therefore eligible for award. After this initial determination, the court will consider whether the Forest Service acted contrary to law by awarding the contract to SRI as plaintiff alleges.

Of particular importance in this case are the solicitation's provisions referring to "Key Personnel." Section H.3 of the solicitation identifies the project manager, writer/editor and volunteer coordinator as key personnel on the contract. Section L.6 contains the instructions for the preparation of proposals. Section L.6(b) states that

> The technical proposal will be used to make an evaluation and arrive at a determination as to whether the proposal will meet the requirements of the Government. Therefore, the technical proposal must present sufficient information to reflect a thorough understanding of the requirements and a detailed, description of the techniques, procedures and program for achieving the objectives of the specifica-

tions/statement of work. Proposals which merely paraphrase the requirements of the Government's specifications/statement of work, or use such phrases as "will comply" or "standard techniques will be employed" will be considered unacceptable and will not be considered further. As a minimum, the proposal must clearly provide the following:

. . . . .

> 4. The technical proposal must include a list of names and proposed duties of the professional personnel, consultants, and key subcontractor employees assigned to the project. Their resumes should be included and should contain information on education, background, recent work experience, and specific scientific or technical accomplishments. The approximate percentage of time each individual will be available for this project must be included. The proposed staff hours for each of the above individuals should be allocated against each task or subtask for the project.

Next, Section L.6(a)(3) advised offerors that their proposals would be evaluated in accordance with Section M of the solicitation. Key personnel is one of the subfactors for assessing an offeror's technical capability listed among Section M's evaluation factors for award.[3] Section M.2(I)(F) states:

> Key Personnel. Provide a list of proposed key personnel with the duties and responsibilities of their respective positions with regard to this solicitation. Estimate how much of their time would be dedicated to PIT. Provide resumes for key personnel to include education, background, recent work experience, and specific accomplishments related to this service.

Plaintiff argues that the evaluation criteria in Section M, as well as the instructions in Section L, indicate that each party submitting an acceptable proposal must identify at least one individual and provide that individual's resume for each key personnel position identified by Section H.3. Defendant contends that SRI identified a volunteer coordinator but admits that the TET recommended

---

**3.** The key personnel factor was priority ranked second-to-last among seven categories.

award to SRI without seeing the volunteer coordinator's resume. Defendant argues that Section L of the solicitation recommends, but does not require, that proposals include resumes for key personnel.

▉ In this instance, the court agrees with defendant's interpretation of the solicitation's requirements and finds that the solicitation does not mandate that resumes be included in the proposal. Section L.6(b), the technical proposal instructions, details the information required to be submitted in response to the solicitation. The instructions state that the technical proposal "must include a list of names" but recommends that "resumes should be included." Plaintiff's argument relies too heavily on the evaluation criteria contained in Section M because Section M is just that—evaluation criteria. Failure to provide information responsive to the evaluation criteria in Section M does not automatically disqualify a proposal from further consideration. Rather, the evaluators would be unable to make an assessment or award points for the missing criteria. In contrast, where a proposal is not compliant with the mandatory technical requirements of the solicitation, the proposal is unacceptable for award. *See Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365 (Fed.Cir. 1999); *Beta Analytics Int'l, Inc. v. United States,* 44 Fed.Cl. 131 (1999). In this case, the technical proposal instructions required that proposals include a list of names of the professional personnel assigned to the project but not the submission of resumes. Accordingly, SRI's failure to provide a resume for the volunteer coordinator should have resulted in a lower point rating but not disqualification from consideration as plaintiff suggests.

▉ However, the fact that SRI chose to describe the necessary qualifications and responsibilities of a volunteer coordinator rather than identify a volunteer coordinator in its proposal causes the court to pause. Defendant argues that it's proposal adequately identified all key personnel, however, the court finds no evidence in the administrative record that SRI identified a volunteer coordinator who would perform on this contract. Instead, the administrative record reflects that SRI, as the incumbent contractor, on April 29, 1999, contacted the contracting officer representative (COR) on the ongoing PIT contract for approval of a proposed individual who would provide the volunteer coordinator services on the incumbent contract. In fact, SRI's initial proposal, which was submitted to the Forest Service on May 18, 1999, did not propose any individual to serve as volunteer coordinator; rather, SRI summarized its selection criteria for a volunteer coordinator by describing the responsibilities and time commitments required of the position. The TET, in its initial review of the proposals, noted that SRI's proposal did not name a volunteer coordinator and commented that SRI "clearly indicated the qualifications and qualities necessary in this position and that it is full-time." There is no evidence in the record that the agency requested SRI to include the name of the proposed volunteer coordinator in its BAFO, and SRI's BAFO does not include that information.

The court concludes that there is no evidence in the record that indicates that SRI identified an individual who would serve as the volunteer coordinator upon award of the contract. Rather, the record documents a conversation between SRI and the COR regarding replacement of the volunteer coordinator on the incumbent contract. SRI's initial proposal and BAFO serve to confirm that the April 29, 1999, conversation was irrelevant to SRI's proposal because the proposals themselves fail to identify a volunteer coordinator. Clearly, SRI's proposal failed to conform to the material terms and conditions of the solicitation. As a result, this court is constrained to find a clear violation of a procurement statute and regulation because the proposal should not have been considered for contract award.

▉ Defendant argues that even if the Forest Service did not comply with the solicitation, SRI's proposal should not have been eliminated from consideration because its actions did not run afar of the fairness requirements of the FAR. Defendant claims that the agency reasonably determined that SRI's proposal was technically satisfactory because SRI stated the position's responsibilities clearly and devoted ample time to those re-

sponsibilities. The court is not unmindful of the difficulty faced by offerors of securing a qualified work force sufficient to secure an award and that this task is generally more difficult for the nonincumbent contractor than the incumbent contractor. Nevertheless, an offeror has a responsibility to propose persons who it reasonably may expect will be available for contract performance and the procuring agency has a responsibility to evaluate the proposals based solely on the factors and subfactors specified in the solicitation. *See* 10 U.S.C. § 2305(b)(1) (1994); FAR §§ 15.303(b), 15.305(a), 15.308 (1999). In this case, the Forest Service awarded the contract to an offeror whose proposal was technically unacceptable according to the technical proposal instructions in Section L. Moreover, the method of selection described in Section M of the solicitation stated that award would be made to the offeror whose proposal was technically acceptable and whose technical/cost relationship was the most advantageous to the government. Therefore, the court concludes that SRI's proposal should not have been considered for award.

The Forest Service was not without recourse in this case where, after the solicitation was issued, it determined that a noncompliant proposal represented the best value to the government. FAR § 15.206 provides: "if a proposal of interest to the Government involves a departure from the stated requirements, the contracting officer shall amend the solicitation, provided this can be done without revealing to the other offerors the alternate solution proposed or any other information that is entitled to protection...." FAR § 15.206(d) (1999). Thus, the Forest Service, having decided that SRI's proposal represented the best value, should have advised all offerors in the competitive range that it decided to relax certain mandatory provisions and afforded all offerors the opportunity to amend their proposals in accordance with the FAR. By awarding the contract to SRI based on a technically unacceptable proposal, the Forest Service committed a clear violation of a procurement statute and regulation.

The Federal Circuit, in *Alfa Laval Separation, Inc.,* held that where a protestor can demonstrate an instance in which a procuring official failed to abide by a mandatory solicitation provision, the protestor will prevail, provided it can demonstrate that, but for the violation, it had a substantial chance to receive the award. *See Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365 (Fed.Cir. 1999); *Beta Analytics Int'l, Inc. v. United States,* 44 Fed.Cl. 131, 138 (1999); *MVM, Inc. v. United States,* 46 Fed.Cl. 137 (2000). Plaintiff argues that it was prejudiced by the Forest Service's improper decision to award the contract to SRI because it's proposal was the only proposal in the competitive range to be technically acceptable and reasonably priced. Defendant contends that even if a technical violation of the solicitation's requirements occurred, such a minor violation did not prejudice Mangi because SRI would still have had better technical ratings even if the TET awarded SRI zero points in its evaluation of key personnel.

██ Defendant's argument misses the point. First, Mangi does not have to prove that it would have won the contract. Rather, Mangi must show "that there was a substantial chance it would have received the contract award but for that error." *Alfa Laval Separation, Inc.,* 175 F.3d at 1367 (citing *Statistica v. Christopher,* 102 F.3d 1577, 1582 (Fed.Cir.1996)). In *Alfa Laval Separation, Inc.,* the Federal Circuit also held that an offeror is prejudiced when it submits the only technically acceptable proposal and the agency awards to an offeror whose proposal should have been judged technically unacceptable. *See Alfa Laval Separation, Inc.,* 175 F.3d at 1368; *Beta Analytics Int'l, Inc.,* 44 Fed.Cl. at 138; *Dubinsky v. United States,* 44 Fed.Cl. 509, 512 (1999). Second, the case law does not support a de minimus exception for mandatory requirements as defendant argues. *See id.* The record in this case reveals that (1) Mangi's initial proposal met all of the technical requirements of the solicitation in addition to demonstrating a clear understanding of the magnitude and challenges of the PIT program and (2) out of the two BAFOs submitted to the Forest Service, Mangi's was the only technically acceptable proposal. The court finds that Mangi must

have had a substantial chance to receive the contract award because it submitted the only proposal meeting all of the government's requirements.

### b. Best Value Determination

In its' motion, plaintiff also claims that the Forest Service found SRI's proposal to be the best value to the government based on a flawed cost/technical tradeoff and that it should have received the award as the low-priced technically acceptable offer. Additionally, plaintiff alleges that the Forest Service failed to justify the [* * *] price premium attached to SRI's proposal and analyze the technical differences between the two proposals in its best value analysis. Defendant contends that summary judgment in its favor is appropriate because the agency's cost-benefit analysis was reasonable and that the BAFO analysis, coupled with the TET's explanation of the deficiencies of Mangi's initial proposal, demonstrates a careful and reasoned cost/technical tradeoff analysis which should not be disturbed. Defendant also argues that the Forest Service was entitled to refuse Mangi's proposal because it represented a risk to the government because Mangi underestimated both the time and the cost of providing the services required for this contract.

 In a best value procurement, the SSA is required by regulation to select the source whose proposal is the best value to the government while contemporaneously ensuring that the proposals are evaluated based solely on the factors and subfactors contained in the solicitation. *See* FAR § 15.303(4), (6) (1999). The source selection decision must be documented and the documentation must include the rational for any business judgment or tradeoffs made or relied on by the contracting officer, including benefits associated with additional costs. *See* FAR § 15. 308 (1999). However, procurement officials have substantial discretion to determine which proposal represents the best value for the government. *See E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed.Cir.1996) (citing *Lockheed Missiles & Space Co., Inc. v. Bentsen,* 4 F.3d 955, 958 (Fed.Cir.1993)

and *Widnall v. B3H Corp.,* 75 F.3d 1577 (Fed.Cir.1996)).

In this case, the solicitation specifically provided that selection for award of the contract would be made to the offeror whose proposal represented the best overall value to the government, with cost being considered secondary to the technical proposal. The solicitation also explained that award would be made to the offeror (1) whose proposal was technically acceptable and (2) whose technical/cost relationship was the most advantageous to the government. Although SRI's proposal may have demonstrated a clear understanding of the breadth of the program and provided the best overall technical package, the court has determined that SRI's proposal was technically unacceptable and therefore not eligible for award. The court concludes, without addressing the totality of the parties' best value arguments, that the Forest Service's best value analysis and contract award were arbitrary and capricious and not in accordance with law because SRI's proposal was not technically acceptable.

### c. Injunctive Relief

In its prayer for relief, Mangi requested that the court permanently enjoin the Forest Service from continuing performance of the contract with SRI and declare that the Forest Service properly award the contract to itself as the only other offeror in the competitive range. In order to obtain a permanent injunction, in addition to proving success on the merits, plaintiff must make three additional showings: (1) that it will suffer irreparable harm if injunctive relief is not awarded; (2) that granting the injunction serves the public interest; and (3) that the harm to be suffered by it outweighs the harm to the government and third parties. *See FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed. Cir.1993); *Ellsworth Assoc., Inc. v. United States,* 45 Fed.Cl. 388, 398 (1999).

 In its briefs, plaintiff does not discuss the relevant standards for granting injunctive relief or attempt a showing that it is entitled to this relief. After careful consideration of the parties' pleadings, the administrative record, and the applicable law, the court concludes that plaintiff has demonstrat-

ed (1) irreparable harm because a proper evaluation may have led to its selection for the award, and that the loss of profit to be made on the contract constitutes irreparable injury; (2) injunctive relief would serve the public interest in preserving the integrity of the procurement process; and (3) the harm to plaintiff and the public's interest in preserving the fairness and integrity of the government's procurement system outweighs the consumption of additional time and government resources in recompeting the procurement. In this case, the existence of irreparable injury to plaintiff, the balancing of harms in favor of plaintiff, and the public interest all lead this court to grant injunctive relief to plaintiff.

In fashioning relief for plaintiff, the court recognizes that it must avoid intruding too greatly into the affairs of the agency. *See Parcel 49C Ltd. Partnership v. United States*, 31 F.3d 1147, 1153–54 (Fed. Cir.1994); *MVM, Inc. v. United States*, 46 Fed.Cl. 137, 142 (2000). Accordingly, the court cannot direct the award of the contract to Mangi because to do so would infringe on the agency's right to decide to make contracts. The court concludes that the Forest Service unlawfully awarded the contract to SRI. As a result, that contract is declared null, void and without legal effect. The court orders that the Forest Service either (1) amend the solicitation to inform all offerors who were within the competitive range that it relaxed the solicitation's requirements pursuant to FAR § 15.206 or (2) resolicit the contract and consider only those bids that are technically compliant.

### CONCLUSION

For the reasons stated, the Forest Service's award of the contract to SRI was arbitrary and capricious and not in accordance with law. Accordingly, plaintiff's motion for judgment on the administrative record is *GRANTED* and defendant's motion for judgment upon the administrative record is *DENIED.* Furthermore, the agency is enjoined from continuing the procurement with SRI under solicitation number WO–99–02. Plaintiff is entitled to recover proposal preparation costs. The parties shall file a joint

stipulation by June 30, 2000, representing such costs. Upon receipt of the parties' joint stipulation regarding proposal preparation costs, the Clerk shall enter judgment accordingly without further order of the court. Costs to plaintiff.

**IT IS SO ORDERED.**