**FRU–CON CONSTRUCTION COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

and

**Hitt Contracting, Inc., Defendant–Intervenor.**

No. 03–1229C.

United States Court of Federal Claims.

Aug. 7, 2003.

Jonathan D. Shaffer, Smith, Pachter, McWhorter & Allen, P.L.C., Vienna, Virginia, for plaintiff. Val S. McWhorter, John S. Pachter, and Edmund M. Amorosi, of counsel.

Opher Shweiki, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. William T.K. Dolan and Charles K. Tyler, Office of General Counsel, Architect of the Capitol, Washington, D.C., of counsel.

Mark S. Dachille, Huddles & Jones, P.C., Columbia, Maryland, intervenor.

## OPINION AND ORDER

HODGES, Judge.

Fru–Con Construction filed a bid protest challenging a contract award by the Architect of the Capitol. The Government contended that this court cannot review procurement decisions by the Architect of the

Capitol because it is not a Federal agency, and because it is part of the Legislative Branch. We ruled in a related case that the Architect of the Capitol is a Federal agency for jurisdictional purposes, and that this court's Tucker Act jurisdiction does not depend on whether the Architect of the Capitol is a part of the Legislative Branch. *Bell BCI Co. v. United States*, 56 Fed.Cl. 465 (2003).

Plaintiff moved for judgment on the administrative record and for preliminary and permanent injunctions. Defendant and Hitt Contracting filed cross motions for judgment on the administrative record.[1] Fru–Con has not shown that the Architect abused his discretion or otherwise acted contrary to procurement law. The Agency's procurement decision was reasonable and rational.

## BACKGROUND

The Architect of the Capitol solicited bids for an expansion of the West Refrigeration Plant at the United States Capitol. Plaintiff submitted its proposal in March 2003. The Architect awarded the contract to Hitt Contracting for $67,195,972, Fru–Con's bid was $5.5 million lower. Plaintiff filed a bid protest with the General Accounting Office in April 2003. The GAO dismissed that action in May because an offeror filed a bid protest in this court involving the same contract. *See Bell BCI Co. v. United States*, 56 Fed.Cl. 465 (2003).

We issued an order in *Bell* on May 9, denying a motion to enjoin the Architect's award. *Bell BCI Co. v. United States*, 03–796C (Fed.Cl. May 9, 2003). An August 1 opinion and order dismissed Bell's motion for judgment on the administrative record and entered judgment for the Government. This opinion addresses plaintiff Fru–Con's motion for judgment on the administrative record.

## DISCUSSION

### A.

This court has jurisdiction "to render judgment on an action by an interested party

---

1. Defendant did not argue its motion to dismiss for lack of jurisdiction because of our ruling in *Bell*. The issue is preserved for appeal.

objecting to ... any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). We review agency procurement decisions according to Administrative Procedure Act standards. 5 U.S.C. § 706. These standards provide that the court will uphold an agency's decision unless plaintiff shows that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); 28 U.S.C. § 1491(b)(4).

A court may not interfere with an agency's procurement decision unless "it is clear that the agency's determinations were irrational and unreasonable." *Acra, Inc. v. United States,* 44 Fed.Cl. 288, 293 (1999) (citation omitted). Government agencies have wide discretion in determining whether an offer meets technical requirements of a solicitation. *CW Gov't Travel, Inc. v. United States,* 53 Fed.Cl. 580, 590 (2002); *see E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed. Cir.1996). Plaintiff must show that the agency's evaluation was arbitrary and capricious and that plaintiff was prejudiced in the process. *CCL Serv. Corp. v. United States,* 48 Fed.Cl. 113, 120 (2000). The fact that Fru-Con disagrees with the evaluator's conclusions is not enough for this court to overturn them. *See ITT Fed. Servs. Corp. v. United States,* 45 Fed.Cl. 174, 185–186 (1999); *CRC Marine Servs., Inc. v. United States,* 41 Fed. Cl. 66, 83–84 (1998).

### B.

This was a best value procurement. The Solicitation required offerors to submit separate proposals for technical and price criteria. Technical criteria were more important than price.[2] The Architect did not conduct a price evaluation unless he found that the contractor was technically qualified.

The technical evaluation criteria were:

(1) General Contractor's Corporate Experience & Past Performance

(2) Chiller Manufacturer's Corporate Experience & Past Performance

(3) Organization & Key Personnel

(4) Management Plan

(5) Subcontractor Management Capabilities

(6) Chillers

The Agency rated bidders "Acceptable" or "Unacceptable" on all six factors. Acceptable meant that an offeror had addressed the factors under review and had met the Solicitation requirements. If the proposal showed any deficiencies or weaknesses, they were minor and easily corrected. Major or extensive deficiencies were "Unacceptable." *See Good Food Servs., Inc.,* 98–1 CPD ¶ 102, at 2, 1997 WL 868303 (Sept. 2, 1997) ("Agencies properly may reject an offer where informational deficiencies are so numerous that their correction would essentially require a major rewriting of the proposal.").

The Architect determined that Fru-Con's proposal was Unacceptable in four of the six technical areas: (1) General Contractor's Corporate Experience and Past Performance; (2) Organization and Key Personnel; (3) Management Plan; and (4) Subcontractor Management Capabilities.

### C.

Plaintiff challenges the Architect's determination that sections of its proposal are Unacceptable, and that any technical deficiencies were de minimis and should have been offset by the $5.5 million savings to the Government from its lower bid. Defendant responds that plaintiff must prove that all technical factors were Acceptable to demonstrate its eligibility. The six technical factors were weighted equally; a rating of Unacceptable on any item rendered the entire proposal unacceptable.[3] The Architect could not consider the alleged $5.5 million savings because plaintiff had to show that all technical factors were Acceptable before the Agency

---

**2.** *See* Solicitation Conditions, Section 18.1. (Technical Evaluation Criteria are more important than price, but "as the difference in technical merit between proposals becomes less significant, the relative importance of the proposed prices will increase.").

**3.** The Source Selection Plan states, "[a] rating of Unacceptable or Marginal for any factor will deem the overall technical proposal unacceptable or marginal. Award shall not be made to a contractor with a Marginal or Unacceptable rating."

could review the price proposal. The Solicitation stated, "[t]he Government will evaluate the price proposals of *all firms found technically qualified*" (emphasis added).

### D.

The Corporate Experience factor is typical of the problems that the contracting officer and the Selection Board had with plaintiff's technical qualifications. Fru–Con argues that the Architect improperly evaluated its corporate experience and past performance by adopting an unreasonable interpretation of comparable projects. The Request for Proposals required "client references of successfully managed contracts for at least three (3) comparable projects performed within the past five (5) years." The Solicitation does not define the term Comparable Project, but the Comptroller General has emphasized the need for proposals containing a history of experience with projects of similar size and complexity. *See Birdwell Bros. Painting & Refinishing,* 2000 CPD ¶ 129, at 5, 2000 WL 1141260 (July 5, 2000). The Instructions set out relevant characteristics, including experience with installing additions to existing structures and large mechanical and electrical systems, handling challenges in staging materials and site access to prominent locations, and renovations in occupied building spaces.[4]

Plaintiff argues that such characteristics of comparability were merely "benchmarks," not mandatory minimum requirements. The Agency may not have considered them mandatory, but merely exemplary of attributes suggesting experience sufficient for the job. In any event, a court will not substitute its judgment for that of a contracting officer in such circumstances. *See, e.g., ManTech Telecom. & Information Sys. Corp. v. United States,* 49 Fed.Cl. 57, 63 (2001). Fru–Con must show that the Architect's procurement decisions had no rational basis. *Delbert Wheeler Constr., Inc. v. United States,* 39 Fed.Cl. 239, 247 (1997).

The Solicitation required an offeror to tailor its proposal to the West Refrigeration Plant Expansion. Fru–Con's proposal was essentially a compilation of generic material that it had submitted for other projects. As a result, it omitted important information required by the Solicitation Instructions and the evaluation criteria. The Selection Board found that plaintiff did not address most of the issues emphasized in the Request for Proposals. Moreover, Fru-con did not produce the information in an organized fashion. The Agency reported that this forced them to search through the proposal to find some information that it needed. Fru–Con argued that the material was cross-referenced, but we could not determine from the record that this was correct in all respects. Fru–Con's proposal "would have to be totally rewritten to meet the requirements of the solicitation." This is the definition of Unacceptable. *See Good Food Servs., Inc.,* 98–1 CPD ¶ 102, at 2.

The Selection Board stated that plaintiff "demonstrated very little experience in Chiller Plant construction," most of its chiller work having been as a subcontractor. In addition, the "Project Management Manual ... [was] very generic, authority is unclear, organization charts are not tied together." The Solicitation required that bidders include key management positions in their proposals, along with the resumes of persons who would occupy those positions. The Solicitation did not require a "commercial manager." Fru–Con listed Mr. Marshall Royce as its commercial manager for the project, and did not include Mr. Royce's resume. Plaintiff listed resumes in two unrelated sections and Mr. Royce's resume is not found in either place. Fru–Con also used generic resumes for positions that required detailed information specific to the project.

The Selection Board Report states that Fru–Con "failed to provide 90% of information requested to evaluate subcontractors and overall detailed subcontractor plans." The Board concluded, "[t]his offeror ... would not be able to successfully complete the requirements of this contract."

---

**4.** Defendant points out that the project would "enhance the security and safety of the Members of Congress and personnel working at and visiting the Capitol. The construction site is in a high-profile, extremely congested area near the Capitol ...."

## E.

The Architect's decision to reject plaintiff's proposal as technically Unacceptable was not arbitrary or capricious. Plaintiff attempted to address important technical requirements with generic information about the corporation and its organization, for example. Its response to defendant's request for details about its subcontractor selection and management process was superficial.

The Solicitation was unusually specific in its requirements for detailed information, evidently because the Architect viewed the job as a delicate and highly complex project.[5] Fru–Con used pages from its corporate brochure to describe its corporate organization and key personnel, for example. It did not provide the detailed subcontractor information that the Solicitation required. Such deficiencies could not be corrected easily, or clarified with minor word changes.

The Architect reasonably determined that plaintiff's listed projects were not comparable to the West Refrigeration Plant Expansion. Even if they were, plaintiff's proposal states that Fru–Con's Eastern Regional Office would manage the project. The Eastern Regional Office did not manage the "comparable" projects listed. If plaintiff had comparable corporate experience and its Eastern Regional Office had handled comparable projects, plaintiff did not include such information in its proposal.

We reviewed the administrative record carefully. It supports the Board's findings. The Agency had no obligation to seek additional information or to search through plaintiff's proposal to find hidden references. *See, e.g., Global Eng. & Constr. Joint Venture,* 97–2 CPD ¶ 241, at 8 (Oct. 6, 1977). Neither the court nor the Agency must look for potentially relevant information misplaced in the proposal, or consider factors that plaintiff has supplemented during litigation.

## CONCLUSION

We do not question plaintiff's ability or experience. The issue is whether defendant acted reasonably in deciding that Fru–Con's proposal was Unacceptable in that it did not meet the specific and detailed requirements of the Agency's Solicitation. It is important to the procurement process that all bidders submit offers according to the same rules. Adequate written proposals are central to efficient procurement of services. This is particularly true of a complex project such as this, where the offeror's price is secondary to its technical expertise.

Insufficient written proposals can disqualify a bidder irrespective of its experience or capability. *See, e.g., Centro Mgmt., Inc.,* 2001 CPD ¶ 41, at 4, 2001 WL 185215 (Feb. 26, 2001). The Architect of the Capitol was not satisfied that plaintiff had met the Solicitation conditions. This was partly because plaintiff's "cut and paste" method was not an effective approach to submitting a proposal that it should have tailored to this job. The administrative record and counsel's arguments at oral argument support the Agency's misgivings.

Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED, for the reasons stated in *Bell BCI Co. v. United States,* 56 Fed.Cl. 465 (2003). Plaintiff's motions to enjoin further construction and for judgment on the administrative record are DENIED. Defendant's and intervenor's motions for judgment on the administrative record are GRANTED. The Clerk will dismiss plaintiff's complaint. No costs.

---

5. *E.g.,* Section 15.2.6.1 states: "Provide a discussion of the methods used by your firm to develop subcontracting possibilities for minority enterprises and small business concerns. (15.2.6.2). Describe, in detail, your firm's subcontractor selection and management process. Describe the work that will be performed by the offeror and work that will be performed by the subs. Describe, in detail, how you ensure that each subcontractor has the relevant experience for this project. Provide criteria used in awarding subcontracts."