**INDUSTRIAL PROPERTY MANAGEMENT, INC.,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 03–2500C.

United States Court of Federal Claims.

Jan. 13, 2004 *.

* Opinion Originally Filed Under Seal on December 18, 2003.

and Support services for the Stratford Army Engine Plant ("SAEP" or the "facility"). The government's Request for Proposal, Solicitation No. DASW01–02–R–001 ("RFP"), indicated that it would be seeking the bid which was the "best value." Industrial Property Management, Inc. ("IPM" or the "plaintiff") contends that the government acted arbitrarily, capriciously, and contrary to law by improperly including a bid from an offeror that was technically unacceptable in the government's best value evaluation and by eliminating IPM from the competition before the final decision was made. The government contends that its decision to conduct a best value analysis without IPM was neither arbitrary, capricious, nor contrary to law. In addition, the government argues that IPM did not stand a chance of award and therefore was not prejudiced by any error in the government's best value determination. For the reasons set forth below, the court **GRANTS** the government's motion for judgment upon the administrative record.

## BACKGROUND

The following facts are not in dispute unless otherwise noted. The SAEP is a former Army-controlled manufacturing plant that was closed in 1997 pursuant to the Defense Base Closure and Realignment Act of 1990, 10 U.S.C. § 2687 (2003) ("BCRA"). Pursuant to BCRA, the government maintains the facility pending transfer to the Local Redevelopment Agency or other disposition.

In 1998, shortly after the base was closed, IPM won a competitive small business set-aside contract for base operations, maintenance and support services at SAEP. The contract type was "cost plus fixed-fee" for a base year period from October 1, 1998 through September 30, 1999, and three options to renew the contract for one year each, all of which the Army exercised. The final option to renew, therefore, was set to expire on September 30, 2002. The total award under IPM's contract was $18,816,607.

In May 2002, prior to the expiration of IPM's final option year, the Army issued the RFP for the follow-on contract. Unlike the contract IPM already had performed, the

Joseph C. Port, Jr., Washington, DC, for plaintiff. P. David Richardson, Harvey J. Nathan, and Kimberle E. Dodd, of counsel.

Gregory R. Firehock, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General, and Director David M. Cohen, for defendant. Capt. Timothy Ryan, General Litigation Division, U.S. Army, of counsel.

## OPINION

FIRESTONE, Judge.

This case arises from a solicitation issued by the United States Department of the Army (the "Army" or "government") for a contract for Base Operations, Maintenance

RFP emphasized that the Army expected the new contractor to ramp down remaining operations at the base as soon as possible. The RFP stated that:

> The *contract goal is to transition all activities* from Maintenance Levels I & II to Level IV (idle buildings).... Contract services will initially be provided at current levels of support for tenants that are still at the facility when this contract begins. *Services will be ramped down as quickly as feasible to caretaker levels* as described throughout this section. This approach will vacate personnel (including the Contractor and Government personnel) from all buildings where cost savings will result. The *intent of this RFP is to minimize caretaker costs as quickly as possible while maintaining only essential services and operations.*

RFP at 2 (emphasis added).

This solicitation is a "best value" procurement, in which the government need not award the contract to the lowest price offeror if the government can obtain the best overall value, considering both price and other factors, from another offeror. The person finally responsible for determining which bid will be accepted in a best value procurement is the contracting officer ("CO"), who determines whether a higher cost offer represents the best value. In this case, the CO was Alyssa A. Murray.

To determine the best value to the government, the CO employs a cost/technical trade-off process:

> This process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest price proposal. The perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documented in the file....

48 C.F.R. § 15.101–1(c). *See* § 15.101; § 15.308. The three evaluation factors, in descending order of importance, were Technical Approach, Past Performance, and Price. The Technical Approach factor was composed of four equally-weighted sub-factors: Understanding Requirements/Plan of Opera-

tion; Staffing and Organization; Quality Control; and Transition/Phase–In Plan.

The RFP noted that "[a]ll technical evaluation factors when combined are significantly more important than price." RFP at 236. However, with respect to the price factor, the RFP advised that price would be "a significant evaluation factor and will become more critical as technical ratings approach equality." RFP at 238.

Pursuant to the RFP, the Army prepared an internal Independent Government Estimate ("IGE") of the appropriate cost for the SAEP contract. RFP at 234. The IGE was to be used "not only to determine whether proposed prices are reasonable, but also to determine [whether] the offeror understands the work and [is able] to perform the contract." RFP at 238. *See also* 48 C.F.R. § 15.404–1. The IGE estimated a total cost of $10,775,874.12 for the base year plus three option years. IGE at 1. The Army anticipated that the cost savings could come mainly from reduced staffing commensurate with the lessening need for maintenance and support.

To assist her in evaluating the proposals, the CO formed an evaluation team (the "Panel"). Each of the evaluators was required to carefully consider each of the proposals pursuant to the criteria contained in the RFP and prepare detailed analyses. *See* 48 C.F.R. § 15.308 (source selection official may rely upon reports and analyses prepared by others).

Each of the evaluators was required to assign an adjectival rating for each of the factors and subfactors set forth in the RFP, except price, as well as an overall adjectival rating. The available ratings were exceptional, good, acceptable, marginal, and unacceptable. The Panel was required to then discuss its ratings and determine a consensus rating for each factor.

On July 22, 2002, the Army received offers from: IPM; Ferguson–Williams, Inc. ("Ferguson"); C.M.C. & Maintenance, Inc. ("CMC"); and JANTEC, Inc. ("JANTEC"). The following day, the technical proposals of the four offerors were forwarded to each member of the Panel. Each member of the Panel reviewed the technical merits of the

four offers and prepared written analyses, and on July 31, 2002 the Panel submitted a technical evaluation report with consensus ratings to the CO. The CO supervised this process carefully, and twice rejected the Panel's report as insufficient and requested that they revisit their analysis. The proposals, which were evaluated on their technical merits without regard to price, received the followed scores:

| OFFEROR | RATING | PRICE |
| --- | --- | --- |
| Ferguson | Good | $ 9,445,145 |
| IPM | Good | $18,539,374 |
| CMC | Acceptable | $* * * * * * [1] |
| JANTEC | Marginal | $* * * * * |

CO Memo to GAO of August 4, 2003 at 7, Administrative Record ("AR") at 13.

At the initial offer stage, IPM's price was nearly twice Ferguson's price. IPM's price had hardly changed from the previous contract, notwithstanding the stated goal of the RFP to substantially lower services and costs going forward. Based on its rating of "Marginal," JANTEC was considered not to be competitive and, as such, was eliminated from the competition. JANTEC filed a bid protest before the GAO on September 16, 2002, seeking to be readmitted to the competitive range. Pursuant to the GAO's recommendation, on November 12, 2002, JANTEC was readmitted to the competitive range and an arithmetic error in calculating its price was corrected, resulting in a price of $* * * * *.

Subsequently, the Army provided all offerors with an initial list of discussion issues, to which offerors were required to respond when they submitted their final proposal revisions. The Army's questions for IPM indicated that it was concerned that IPM's price was too high, and that it did not adequately address how it planned to downsize its operations in accordance with the stated goals of

the RFP. IPM responded by addressing the Army's concerns.[2]

Two months later, during the discussion period, the CO followed up with an additional warning that, among other concerns, IPM's prices were still too high. The CO asked plaintiff to "[p]lease reevaluate your total price." Letter of November 14, 2002 from CO to IPM. In response to the CO's November 14, 2002 letter, IPM further lowered its prices; however, IPM refused to do so with respect to five "environmental tasks" because it "believe[d] that continued efforts to reduce these costs would expose the government as owner of the facility and IPM as the operator to environmental liability both civil and criminal...." Letter of November 25, 2002 from IPM to Sally M. Williams, in Pl. Mot. for Judgment upon the Administrative Record.

On November 27, 2002, the Army received Final Proposal Revisions and the offerors' responses to the discussion issues. Plaintiff claims that these new proposals were not reviewed. The government responds that the revised proposals were thoroughly reviewed by the Panel. What is undisputed is that IPM and Ferguson received technical ratings of "Good" while CMC and JANTEC received technical ratings of "Acceptable." It is undisputed that the Panel issued a second evaluation of IPM in which it indicated that it received and evaluated the additional information that IPM had provided since the first evaluation, and that this additional information did not change IPM's overall rating. It is also undisputed that both IPM's and CMC's final bids were higher than what the government estimated that the job should cost. The final bids, including the IGE, were as follows:

| OFFEROR | PRICE [3] |
| --- | --- |
| JANTEC | $* * * * * |

---

1. In its Statement of Facts, the government has listed CMC's proposed bid as $* * * * *. The difference between the government's figure and the plaintiff's figure is not material, particularly in light of the fact that CMC was eliminated from the competition for receipt of the award.

2. Here, another slight disagreement between the parties arises. While plaintiff feels that it did an

adequate job addressing the Army's concerns about price and downsizing operations, the government contends that plaintiff's plan was "vague."

3. The government's figures are slightly different in some circumstances. The government's figures are as follows: JANTEC, $* * * * *; IPM, $12,642,551; CMC, $* * * * *.

| | |
|---|---|
| Ferguson | $10,527,948 |
| [IGE] | [$10,775,875] |
| IPM | $12,642,549 |
| CMC | $* * * * * |

Source Selection Decision Memorandum at 1, AR at 152.

IPM's relatively high price as compared with the bids of Ferguson and JANTEC was, at least in part, due to the fact that IPM sought to make a profit of 9.5%, which was "considered to be somewhat high" compared to the average of 6% for similar procurements. CO Memorandum to GAO of August 4, 2003 at 18, AR at 24.

Although both Ferguson and IPM both received overall ratings of "good" for the technical and past performance factors, and IPM received an "Exceptional" in one subfactor, Ferguson's technical subfactor ratings were better than IPM's subfactor ratings in three out of four categories.

| TECHNICAL SUBFACTOR | FERGUSON | IPM |
|---|---|---|
| Understanding Requirements/ Plan of Operation | Good | Acceptable |
| Staffing and Organization | Acceptable | Exceptional |
| Quality Control | Good | Acceptable |
| Transition (Phase–In) Plan | Good | Acceptable |

Source Selection Decision ("SSDecision") at 2, AR at 153.

On April, 28, 2003, the CO issued the SSDecision. AR at 152–60. She noted that she had reviewed and adopted the technical evaluation report and independently reviewed and evaluated: (1) the proposals; (2) the offerors' responses to the technical and price discussion issues; and (3) the Final Proposal Revisions. *Id.* at 1, AR at 152; CO Memo to GAO at 35, AR at 41. Pursuant to this "impartial and comprehensive evaluation," she determined "that there were no outstanding issues." SSDecision at 1, AR at 152. She then set forth the prices and consensus ratings for all factors and subfactors for all offerors. *Id.* at 1–3, AR at 152–54.

Based on the price of the bids and the corresponding technical scores that the bidders received, the CO narrowed down the competition to JANTEC and Ferguson. Ferguson and JANTEC had both received at least "Acceptable" ratings and both of their bids were lower than the IGE and the other two bids. The CO asserted that the increased cost of choosing IPM or CMC would not be worth the additional value, if any, that they would provide. Consequently, the CO concluded that neither IPM nor CMC would be considered the "best value," and as such, they were eliminated from the competition. As the CO subsequently explained to IPM,

"Ferguson–Williams's proposal is clearly superior in all aspects and represents the best value to the Government, considering price and technical evaluation factors." Post Award Debriefing Letter from CO to IPM of July 11, 2003 at 3, AR at 103.

Before filing this bid protest, IPM brought a protest before the GAO. The GAO rejected plaintiff's objections to the CO's failure to consider IPM in the best value determination. *Indus. Prop. Mgmt.*, B–291,336.2 Comp. Gen., 2003 WL 22671062 at *1–4, AR at 2–6. The GAO concluded that the "contracting officer adopted the evaluation team's conclusion that the technical merit of the two higher-priced proposals (one of which was IPM's) did not justify paying their higher prices." *Indus. Prop. Mgmt.*, B–291,336.2 Comp. Gen., 2003 WL 22671062 at *4, AR at 4. Because "the source selection document included an express determination that there was nothing about the two highest-priced proposals that justified their selection over a proposal with the same overall rating" on non-price factors, the GAO concluded there was "no requirement that it conduct a second tradeoff between the Ferguson–Williams and IPM proposals." *Id.* at *4, AR at 5. The GAO explained that a cost-technical tradeoff is not required for a proposal that is priced higher but not ranked more favorably on

non-price factors. *Id.* at *4, AR at 6. Therefore, the GAO concluded that "IPM has given us no basis for questioning the evaluation conclusions here." *Id.* at *4, AR at 6.

IPM subsequently filed suit in this court for relief. In its Cross–Motion for Judgment upon the Administrative Record of November 19, 2003, plaintiff contends that the government acted arbitrarily, capriciously, and contrary to law by improperly considering JANTEC's bid on the grounds that it was technically unacceptable. More specifically, IPM notes that the Administrative Record states that JANTEC "did not price trash removal, high voltage electrical system testing, hazardous waste testing, and several smaller issues." Post–Business Clearance Memorandum of May 31, 2003 at 15, AR at 138. Thus, IPM argues that the government erred by making the final comparison between JANTEC and Ferguson. IPM also argues that the government erred in not making the final comparison between IPM and Ferguson. The government argues in response that it accepted Ferguson's bid because it was, in fact, the "best value" based on the needs of the government as reflected in the RFP. Therefore, the government's decision to use Ferguson was neither arbitrary, capricious, nor contrary to law. After briefing on cross-motions for judgment upon the administrative record, oral argument was heard on December 15, 2003.

## DISCUSSION

### A. Jurisdiction and Standard of Review

The United States Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to … any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This court reviews agency procurement decisions according to the standards set out in the Administrative Procedure Act. 5 U.S.C. § 706; *Mangi Envt'l Group, Inc. v. United States,* 47 Fed.Cl. 10, 17 (2000). "These standards provide that the court will uphold an agency's decision unless plaintiff shows that it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A);

28 U.S.C. § 1491(b)(4)." *Fru–Con Construction Co., Inc. v. United States,* 57 Fed.Cl. 483, 484–85 (2003).

In addition, in order to prevail in a protest the protester must show a significant error in the procurement process, and also that the error prejudiced it. *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057 (Fed.Cir.2000). To establish prejudice a protester must show that there is a "substantial chance it would have received the contract award but for that error." *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999). "The fact that [IPM] disagrees with the evaluator's conclusions is not enough for this court to overturn them." *Fru–Con Construction,* 57 Fed.Cl. at 484–85.

### B. IPM was not Prejudiced by Consideration of JANTEC's Bid

IPM first contends that the Army acted arbitrarily, capriciously, and contrary to law by including JANTEC in the best value tradeoff analysis, because JANTEC's proposal was not technically acceptable. AR at 848, AR at 138 (failure to price all items is cause for exclusion; JANTEC did not price all items in its final proposal). Consequently, IPM claims that the Army had no power to accept JANTEC's proposal in accordance with the terms of the RFP. *E.W. Bliss Co. v. United States,* 77 F.3d 445, 448 (1996); *Mangi Envt'l.* 47 Fed.Cl. at 17. IPM reasons, therefore, that JANTEC should not have been included in the cost/technical tradeoff. Rather, IPM argues that it should have been considered along with Ferguson in the final cost/technical tradeoff. IPM further argues that it was prejudiced by the government's action in that IPM had "a substantial chance it would have received the contract award but for that error." *Alfa Laval Separation,* 175 F.3d at 1367. IPM argues that had IPM, rather than JANTEC, been compared with Ferguson in the final cost/technical tradeoff, IPM could have won the award.

The government argues in response that while JANTEC may not have fulfilled the requirements set out for the bid in the RFP, the Army has discretion as to whether to

consider a bid that does not meet the requirements of an RFP to be technically acceptable. Therefore, it reasons that the Army's decision to include JANTEC's proposal in the cost/technical tradeoff, while discretionary, is still entitled to deference from this court under the arbitrary and capricious standard. More importantly, however, the government contends that IPM was not prejudiced by the inclusion of JANTEC. The government argues that because IPM and Ferguson are equal on non-price factors, and because IPM's offer was 20% more expensive than Ferguson's offer, no detailed cost/technical tradeoff was required. Since a cost/technical tradeoff is only required in situations in which one of the bidders has a lower price but the other is offering higher quality, a cost/technical tradeoff was not required in this case.

The court assumes, without deciding, for the purposes of this opinion, that JANTEC was improperly included in the cost/technical tradeoff with Ferguson.[4] Even assuming that JANTEC's proposal should have been, and was, excluded from the cost/technical tradeoff analysis, however, the government was under no obligation to conduct a cost/technical tradeoff analysis that included IPM. The government, therefore, did not act arbitrarily, capriciously, or contrary to law by failing to conduct a cost/technical tradeoff analysis between IPM and Ferguson.

■ It is well settled that the government is only required to make a "cost/technical tradeoff ... where one proposal is rated higher technically than another, but the other is lower in cost." *State Mgmt. Servs. Inc.*, B–255,528 Comp. Gen., 1995 WL 19600 at *5. *See Gulf Group, Inc. v. United States*, 56 Fed. Cl. 391, 399 (2003); *Joint Threat Services*, B–278,168 Comp. Gen., 1998 WL 23073 at *10. In the present case, the government only made a cost/technical tradeoff between JANTEC and Ferguson because Ferguson received a higher technical rating than JANTEC, while JANTEC's price was lower. Therefore, the government correctly determined that a cost/technical tradeoff analysis was only required to compare JANTEC's lower price proposal with Ferguson's proposal. Had JANTEC not been included in the consideration, the government would not have been required to make such a tradeoff between Ferguson and IPM. IPM's higher cost proposal was not ranked superior to Ferguson's proposal. To the contrary, Ferguson received higher ratings than IPM in three out of four parts of the Technical Subfactor. In the end, both Ferguson and IPM received the same "good" rating. The government, therefore, did not act arbitrarily, capriciously, or contrary to law when it failed to conduct a cost/technical tradeoff analysis between IPM and Ferguson.

■ IPM cites *Alfa Laval* for the proposition that a bidder can successfully protest, based on a "substantial chance" theory, an award even if its bid is 40% higher than the winning bid. IPM erroneously concludes that its bid, which was only 20% higher than Ferguson's bid, surely would have stood a "substantial chance" of award had it been compared with the winning bid. However, IPM's reliance on *Alfa Laval* is misplaced. In that case, the protesting bidder "submitted the only bid meeting all of the government's requirements." *Alfa Laval,* 175 F.3d at 1368. In the present case, of course, Ferguson and IPM both met the government's requirements. Moreover, the Panel found that Ferguson and IPM met the government's requirements equally well. It is, therefore, incorrect for IPM to conclude that its bid, which was 20% more costly than the bid of a technical equal, would have borne a substantial chance of award had it been compared with Ferguson. Because IPM would have stood no substantial chance of award had JANTEC not been included, the Army did not act arbitrarily, capriciously or contrary to law when it included JANTEC in the competitive range.

Finally, plaintiff relies on *Impresa Construzioni Geom. Domenico Garufi v. United*

---

**4.** At oral argument government counsel explained that JANTEC had in fact bid on the missing items, but that its bid was very sloppy and thus the bid was not clear. The government decided not to supplement the administrative record with support for this statement. Accordingly, the court must assume that JANTEC's bid was not conforming in failing to provide a separate price for each line item as required by Section M. RFP at 236, AR at 848.

*States,* 238 F.3d 1324 (Fed.Cir.2001) as support for its contention that a protester can successfully contest a contract award whether or not the protester can prove that it would have been next in line for the award. In that case, the Federal Circuit held that a plaintiff has standing to contest a contract award when the plaintiff has a direct economic interest in the outcome of the case. *Id.* at 1334. The protester in that case had a direct economic interest because the government conceded that, if the protest were allowed in that case, "the government would be obligated to rebid the contract, and appellant could compete for the contract once again." *Id.* Plaintiff reasons that, in the present case, since JANTEC should have been excluded from the bidding process, the CO could set aside the award to Ferguson and thus leave room for IPM to get the award. *Impresa* is inapposite for several reasons.

First, *Impresa's* facts are significantly different than those of the present case. In *Impresa,* the protester contended that the mistake which the CO made was that the *awardee* should have been excluded from the bidding process. The Federal Circuit accordingly concluded that overturning the award could create a substantial chance for the plaintiff to win the contract when the contract was rebid. *Id.* at 1341. In the present case, on the contrary, plaintiff does not contend that Ferguson, the awardee, has committed any wrongdoing that should prevent its inclusion in the bidding process. Rather, IPM argues that JANTEC, another *unsuccessful bidder,* was improperly considered. Therefore, in *Impresa,* if the protester were correct that the challenged bidder should have been excluded, the contract would necessarily have to be awarded to another bidder; in the present case, even if IPM were correct that JANTEC should have been excluded, the contract could still be performed by Ferguson. Unlike in *Impresa,* in the present case there is no necessary connection between the disqualification of a challenged bidder and the qualification of the awardee to perform the contract. Therefore, *Impresa* is not authority that, in all cases, exclusion of any bidder is grounds for setting aside an award to a proper awardee.

Second, even if *Impresa* were factually similar to the present case, it does not stand for the proposition for which IPM cites it. IPM argues that since, in *Impresa,* the contract was rebid when the awardee was excluded, then in the present case, if JANTEC were excluded, then the contract would also have to be rebid. However, in *Impresa,* the government specifically "conceded at oral argument, if [the protester's] bid protest were allowed ... the government would be obligated to rebid the contract, and [the protester] could compete for the contract once again." *Id.* at 1334. Therefore, in *Impresa,* the Federal Circuit held that because the government conceded that there would have to be a rebid if the awardee was excluded, then, since the awardee should have been excluded, there would have to be a rebid. *Id.* This is not the same as a holding that there has to be a rebid in any case in which a bidder is excluded. The government has made no concession in the present case that there would have to be a rebid should JANTEC be excluded. Therefore, this court may not order the government to rebid the contract on the strength of *Impresa* when the government has made no concession that there would have to be a rebid, even if JANTEC should properly have been excluded.

Lastly, *Impresa* specifically addresses a bidder in the position of IPM, and holds that such a bidder "has no direct economic interest in the award of the contract." *Id.* The *Impresa* court allowed the protester to contest the award because the protestor was "not rated below second." *Id.* In a case in which the protester is rated below second, such as the one at bar, "the bid protester ha[s] no economic interest in the outcome since, if the protest were successful, the award would go to another party." *Id.* at 1334. In this case, IPM was rated below second; even if the protest were successful and JANTEC were excluded, Ferguson would still retain the award. Therefore, unlike the protester in *Impresa,* IPM would only be successful if at least two other bidders were excluded. In view of the foregoing, plaintiff has failed to show how it was prejudiced by the CO's consideration of JANTEC's proposal in the cost/technical tradeoff.

## C. The Government's Decision to Excluded IPM from the Final Cost/Technical Tradeoff was not Arbitrary, Capricious, or Contrary to Law

■ As discussed above, the government's decision not to perform a detailed cost/technical tradeoff between IPM and Ferguson did not prejudice IPM because of the ratings they received. Plaintiff argues, however, that a cost/technical tradeoff should have been performed between IPM and Ferguson because IPM's proposal could be viewed as superior to Ferguson's proposal. Plaintiff contends that the Army acted arbitrarily, capriciously, and contrary to law by excluding IPM from the substantive best value analysis solely on the basis of price. In particular, IPM states that the Panel failed to appreciate IPM's downsizing plan and that, in a proper tradeoff evaluation, Ferguson's "Acceptable" rating in staffing and organization should have been outweighed by IPM's "Exceptional" rating in that category. Plaintiff concludes that this court should look beyond the overall ratings of "Good" that both Ferguson and IPM received from the Panel and conclude that IPM's overall rating of "Good" was in fact better than Ferguson's overall rating of "Good."

The government responds that IPM's arguments regarding its rating are unsupported. The government argues that the Army did in fact review IPM's downsizing plan, but did not think that it was adequate to overcome the 20% price differential between the bids of IPM and Ferguson. Consequently, the Army contends that it was correct in using price as a determining factor, although it did not use it as the sole factor, as IPM suggests. The government's argument that plaintiff's allegation that the CO did not thoroughly review IPM's improved proposal of November 27, 2002 is without support. The government also argues that the single factor in which IPM excelled as compared with Ferguson is more than offset by the three factors in which Ferguson was rated higher.

The government claims that the views of all of the members of the Panel were taken into account, and that IPM's suggestion that the court look beyond the Panel's recommendation to see what rating the individual Panel members gave to IPM and Ferguson is without precedent. In the alternative, the government argues that IPM's downsizing plan was facially inadequate and therefore its proposal would not have been chosen in place of Ferguson's proposal in any event. For the reasons discussed below, the court agrees with the government.

IPM's contention that it was prejudiced because the Army could have concluded that IPM's "Exceptional" rating in staffing and organization outweighs its "Acceptable" rating in the other three categories has no support. IPM argues that this court should look beyond the Panel's rating to the individual factors that made up the overall rating and to the views of individual members of the Panel; the court finds that there is no basis for such an inquiry. The party responsible for awarding the contract is the CO. 48 C.F.R. § 1.601 (2003). The CO may utilize the information provided to it by the Panel, 48 C.F.R. § 15.308 (2003), but it is the CO who has the authority to make the findings and the determinations upon which he or she must base the decision to award the contract. 48 C.F.R. § 1.602–1 (2003). The weight that is to be accorded to each factor and subfactor is set out in the RFP itself. RFP at 236, AR at 848. The RFP states that the subfactors within Factor 1, to wit Understanding Requirements/Plan of Operation, Staffing and Organization, Quality Control, and Transition/Phase–In, "are all equal to each other." RFP at 236, AR at 848. Plaintiff's suggestion that one subfactor, Staffing and Organization, should be valued more highly than the other subfactors, or that the opinion of a single member of the Panel should carry more weight than the final decision of the CO is therefore without merit.[5]

---

5. IPM has provided the court with authority stating that it is within the contract awarding agency's discretion to utilize a single "discriminator," that is, a single component part of a subfactor, to distinguish between subfactors, even if the discriminators are all of equal weight. *See e.g., Com-* *puter Sciences Corp. v. United States,* 51 Fed.Cl. 297, 309–10 (2002); *Keane Fed. Sys., Inc.* B– 280,595 Comp. Gen., 1998 WL 786902. IPM asks the court to assume that the CO would use her discretion to weigh discriminators unequally if a best value determination were conducted

Plaintiff's conclusion that the Army must have not have adequately reviewed IPM's revised proposal, is neither logically necessary nor supported by the record. As the government notes, another possible reason for the fact that the Panel did not raise IPM's rating after IPM addressed the Army's concerns about its proposal is that IPM's improvements were not good enough. There is no requirement that the Army award a contract based on the effort that a bidder puts into its proposal. It is entirely possible that IPM adequately and in good faith addressed the concerns with its initial proposal that the Army expressed, and yet still did not provide the Panel with a basis for raising its overall rating from "Good" to "Exceptional." In short, IPM ignores the possibility that, price aside, its proposal was simply not exceptional. Additionally, the record shows that the Panel's evaluation, on which the CO relied, did consider IPM's improved proposal. AR at 421. It was reasonable for the CO to find that, based on the Panel's evaluation, IPM was as "good" as was Ferguson, and no better. It was reasonable for the CO to offer a contract to the less expensive of two offerors, both of whom, after consideration, achieved the same rating. Consequently, the court finds that the CO did not act arbitrarily, capriciously, or otherwise not in accordance with the law when she chose not to include IPM in the final cost/technical tradeoff with Ferguson and JANTEC. As noted above, IPM's disagreement with the CO's conclusions is not enough to show that the conclusions regarding IPM's technical proposal were arbitrary or capricious. *Fru–Con Construction,* 57 Fed.Cl. at 484–85.

Plaintiff misconstrues the meaning of the RFP when it reads the phrase "technical evaluation factors ... are significantly more important than price" to mean that price cannot be a consideration at all. Rather, it must be read in light of the requirement that

the price of a bid would become "more critical as technical ratings approach equality." RFP at 236, 238. In the context of two bids with very similar technical ratings, it was not an abuse of discretion for the CO use the factor of price to distinguish between competing bids, in conformity with the RFP. *See, e.g., Master Security, Inc.,* Comp. Gen. B–221,831, 1986 WL 63499; *See* RFP at 236. Therefore, insofar as IPM's bid and Ferguson's bid were comparable, the CO did not commit an error when she chose to eliminate IPM from the cost-technical analysis.

## CONCLUSION

Based on the reasoning set forth above, the court **GRANTS** the government's November 10, 2003 motion for judgment upon the administrative record. The clerk is therefore directed to enter judgment accordingly. Each party shall bear its own costs.

---

between IPM and Ferguson. There is no support in the record for this assumption. Additionally, IPM has provided the court with no authority stating that there is any occasion in which the CO *must* use her discretion to weigh discriminators differently. In each case that IPM has provided, the discretion of the CO with regard to weighing discriminators was upheld. *See e.g.,*

*Computer Sciences Corporation,* 51 Fed.Cl. at 309–310; *Keane Fed. Sys.,* B–280,595 Comp. Gen., 1998 WL 786902. Without any authority or support in the record to the contrary, the court finds no reason to assume that the CO would use her discretion to weigh discriminating factors differently than she did the first time the evaluation was conducted.